# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

COMPOSITE RESOURCES, INC.,

        Plaintiff,

   vs.

COMBAT MEDICAL SYSTEMS, LLC and
ALPHAPOINTE,

        Defendants.

Civ. Action No.  3:17-CV-00072-FDW-DSC

## PLAINTIFF'S REPLY TO DEFENDANTS' CLAIM CONSTRUCTION BRIEF

Plaintiff Composite Resources, Inc. submits its Reply to Defendants' Claim Construction Brief (ECF No. 79).

## I. INTRODUCTION

Defendants' Claim Construction brief commits a multitude of cardinal claim construction sins—any of which would result in an erroneous claim construction.  Prevalent among Defendants' faulty proposed constructions is the introduction of limitations from the specification of the patent into their claim interpretations.  This is not proper.  Similarly, Defendants introduce limitations from the prosecution histories of the patents-in-suit into their proposed constructions.  Again, this is improper.  Attached at Exhibit A is a chart highlighting (in yellow) the many additional limitations Defendants seek to include.  Defendants' proposed claim constructions are contrary to established Federal Circuit precedent, and should not be adopted.

**A.**    *It Is Improper to Import Limitations from the Specification into the Claim.*

"[I]t is the function of the claims, not the specification, to set forth the limits of the patentee's claims. Otherwise, there would be no need for claims." *Gobeli Research Ltd. v. Apple*

*Computer, Inc.*, 384 F. Supp.2d 1016, 1020 (E.D. Tex. 2005). It is, therefore, improper to read limitations from the patent's specification into its claims. As the Federal Circuit has held: "**[t]he patentee is entitled to the full scope of his claims, and we will not limit him to his preferred embodiment or import a limitation from the specification into the claims.**" *Kara Tech., Inc. v. Stamps.com, Inc.,* 582 F.3d 1341, 1348 (Fed. Cir. 2009) (emphasis added); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995) (*en banc*), aff'd, 517 U.S. 370 (1996) ("The written description part of the specification itself does not delimit the right to exclude. That is the function and purpose of claims."); *Nazomi Commc'ns, Inc. v. ARM Holdings, P.L.C.*, 403 F.3d 1364, 1369 (Fed. Cir. 2005) (claims may embrace "different subject matter than is illustrated in the specific embodiments in the specification").

Indeed, the language of the claims is not limited to the preferred embodiment presented in the specification, even if the specification only describes one embodiment. *Phillips v. AWH Corp.,* 415 F.3d 1303, 1323 (Fed. Cir. 2005); *Kara Tech.*, 582 F.3d at 1345 (noting that the Federal Circuit has "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment"); see also *Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d 1343, 1350 (Fed. Cir. 2013) ("'The patentee is entitled to the full scope of his claims, and we will not limit him to his preferred embodiment or import a limitation from the specification into the claims.'"); *Comaper Corp. v. Antec, Inc.*, 596 F.3d 1343, 1348 (Fed. Cir. 2010) (refusing to limit the term "case" to the sole embodiment of an enclosed case in the specification); *DSW, Inc. v. Shoe Pavilion, Inc.*, 537 F.3d 1342, 1348 (Fed. Cir. 2008) (holding that the district court erred by importing a limitation from a preferred embodiment, even where the claims at issue were phrased generally); *Agfa Corp. v. Creo Prods. Inc.*, 451 F.3d 1366, 1376-77 (Fed.Cir. 2006).

As *Phillips* explained, "although the specification often describes very specific embodiments of the invention, [the Federal Circuit] ha[s] repeatedly warned against confining the claims to those embodiments." 415 F.3d at 1323. Improperly reading a limitation from the specification into the claim is reversible error. *Markem-Imaje Corp. v. Zipher Ltd.*, 657 F.3d 1293, 1300-01 (Fed. Cir. 2011), (reversing the district court and holding that the district court improperly read in an extraneous "tension measurement" limitation from the specification into the claim.) "To avoid importing limitations from the specification into the claims, it is important to keep in mind that the purposes of the specification are to teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so." *Phillips,* 415 F.3d at 1323.

**B.** ***Absent a Clear Disavowal of Claim Coverage, it is Impermissible to Read a Limitation from the Prosecution History into the Claims.***

Though the prosecution history of a patent is part of the intrinsic evidence on which a proper claim construction is based, the prosecution history may not "enlarge, diminish, or vary" the claims themselves. *Chimie v. PPG Indus., Inc*., 402 F.3d 1371, 1380-81 (quoting *Markman*, 52 F.3d at 980); see *Phillips* 415 F.3d at 1317 (explaining that although the file history is relevant intrinsic evidence, it documents an "ongoing negotiation" between the applicant and the PTO, not the final product). The Federal Circuit has held that it is improper to read in a limitation from the prosecution history unless the patentee has "clearly disavowed coverage" of the subject matter that would be excluded. See, e.g., *IMS Tech., Inc. v. Haas Automation, Inc*., 206 F.3d 1422, 1439 (Fed. Cir. 2000); *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp*., 493 F.3d 1358, 1365 (Fed. Cir. 2007) (declining to limit claim meaning based on certain statements in the prosecution history that were "not sufficiently clear and deliberate" and finding no prosecution disclaimer).

**C.**  *Defendants' Citation to "Prior Art References" Is in Error.*

Defendants have invited the Court to commit another legal error by relying on "prior art references" in construing the claim terms.  By making these arguments, Defendants attempt to inject an improper invalidity analysis into the claim construction issues before the Court. The Federal Circuit has "certainly not endorsed a regime in which validity analysis is a regular component of claim construction." *Kapusta v. Gale Corp.*, 155 Fed. Appx. 518, 523 (Fed. Cir. 2005) (quoting *Phillips*, 414 F.3d at 1327).  The only time that such an approach might be appropriate is if the claim terms at issue are ambiguous, which the instant terms are not. The Court should not engage in the suggested analysis.

Despite the foregoing, if the Court were to entertain Defendants' suggestion to engage in an invalidity analysis at this stage of the case, the Court would have to review the claims *as a whole* and the prior art references *as a whole* to determine whether the prior art of record renders the claims *as a whole* invalid (by either anticipation or obviousness). See *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1143 (Fed. Cir. 1985) ("Not only must the claimed invention as a whole be evaluated, but so also must the references as a whole, so that their teachings are applied in the context of their significance to a technician at the time– a technician without our knowledge of the solution.").

**D.**  *Defendants' Made-for-Litigation "Expert" Testimony*

Defendants' brief is peppered with arguments allegedly supported by their "expert," Dr. Jensen.  Defendants exemplify the reason for the Federal Court's warning that "extrinsic evidence consisting of expert reports and testimony is generated at the time of and for the purpose of litigation and thus can suffer from bias that is not present in intrinsic evidence." *Phillips* at 1318. The admissions made by Dr. Jensen are particularly troubling:

- Dr. Jensen is **not a person of ordinary skill in the art** (Jensen Deposition[1] at 19:1-8; 48:16-49:2; 58:24-59:2);

- Dr. Jensen has **no knowledge of the state of the art** relating to tourniquets in 2005 when the '067 Patent application was filed, or even in 2008 after the '253 Patent application was filed (Exhibit B at 13:11-17);

- Dr. Jensen **does not know what art is relevant to tourniquets** (Exhibit B at 25:5-26:4);

- Dr. Jensen was **not even familiar with commercial tourniquets until sometime in 2008** (Exhibit B at 13:11-17);

- Dr. Jensen **has not inspected _any_ of the tourniquets at issue** in this case (Exhibit B at 12:2-8);

- Dr. Jensen had **never seen the patents at issue** in this case until he was retained by Defendants, and could not recall whether he had seen _any_ tourniquet patent prior to September of 2017, **when he was retained by Defendants** (Exhibit B at 18:13-21).

As the Court is aware, "the ordinary and customary meaning of a claim term is the meaning that the term would have had to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1313. As Dr. Jensen's admissions make clear, he is not a person of ordinary skill in the art (POSITA), has no familiarity with what the (tourniquet) art is, has not bothered to inspect any of the tourniquets at issue in this case (neither Defendants' infringing devices nor CRI's commercial embodiment of its patented device), and provides only made-for-litigation testimony. Jensen's report and testimony should not be considered in connection with the Court's construction of

---

[1] Dr. Jensen's Deposition testimony is attached at Exhibit B.

disputed patent claim terms, particularly when the intrinsic evidence is clear. *Kara Tech.*, 582 F.3d at 1348 ("While helpful, extrinsic sources like expert testimony cannot overcome more persuasive intrinsic evidence.").

<h2 style="text-align:center">II. ARGUMENT</h2>

Defendants' claim constructions are erroneous and contrary to law, as set forth below. Attached at Exhibit A is a chart highlighting (in yellow) the additional limitations Defendants improperly seek to inject into their constructions.

**A. Allegedly Indefinite Terms**

**1. "a gap is located between portions of … applied to the body part"**

Plaintiff claims that the term "gap" cannot be construed with certainty. A "gap" appears in the specification, as it is clearly illustrated in Figures 3, 5, 7, 8, 10, and 11 of the '067 Patent. The patent Examiner understood the term, as it was he, rather than the patentee, who entered an amendment to the claim using this term. The phrase should be given its plain meaning.

**2. "tends to not slip"**

This phrase is not part of a claim currently accused to be infringed. Contrary to Defendants' assertion, the specification explains this phrase (to the extent there is any confusion): "when the inner strap 18 bends around the buckle 38 after being applied to an arm or leg, the bend tend to prevent slippage of the inner strap 18 in the overlapped portion." '067 Patent, Col. 7, lines 49-52. A plain and ordinary meaning is proper.

**3. "transition areas"**

Defendants claim that they are unable to understand the meaning of these terms. They then engage in an analysis that improperly imports limitations, improperly references prior art, and cites to a POSITA who is not. These terms should be given their plain meaning.

### B. Buckle of the '253 Patent

#### 1. "end" of the buckle

Defendants, in connection with construction of a single, ordinary word —"end" — improperly introduce limitations from the specification of the '253 Patent. Defendants refer to patent figures and the prosecution history to inject "rigid," "solid-material," positions ("at the extremity opposite the first/second end"), and connections ("interconnecting the first and second lateral sides and the intermediate bar"). This is improper, particularly when an "end" is nothing more than an "end." A plain and ordinary meaning is proper. See Exhibit A.

#### 2. "lateral side"

Defendants again improperly introduce limitations from the specification of the '253 Patent. Defendants inject "rigid," "solid-material," positions ("at the side of the intermediate bar opposite the first/second lateral side"), connections ("connected to the second end of the outer sleeve"), and additional structures ("forming a first/second port for the outer sleeve to be fed through"). All of these additional limitations are improper, as the claims should (and do) outline the invention. See Exhibit A.

#### 3. Additional claim terms related to the buckle

Defendants repeat their erroneous constructions by persisting to introduce additional elements when plain and ordinary meaning is appropriate. Use of "rigid," "solid-material," and positions ("closest to the first/second lateral side") is improper. See Exhibit A.

### C. Other Claim Terms and Phrases

#### 1. "upon passing the means for circumferentially surrounding through the means for looping, a portion of the means for compressing also passes through the means for looping"

With no support whatsoever, Defendants improperly introduce the limitation of *time* to its proposed construction. Defendants seek to introduce the concept of "simultaneously, but not before." Defendants point to prior art and specific embodiments to arrive at their definition. As set forth above, this is contrary to well-established law.

**2. "slidably engaging"; "slidable engagement"; or "slidably engage"**

The plain and straightforward meaning of "slidably engage" has been conflated by Defendants to include limitations of straps, sleeves, and positions ("fastened inside and at the tip…but is not fastened at the center or middle…within the pocket of inner space"). The phrase "slidably engage" cannot include all of these limitations. See Exhibit A.

**3. "outer sleeve"**

Not surprisingly, Defendants add the limitations of "tubular," "pocket," and an "open end" or "opening large enough that an inner strap may be exposed" to their proposed construction. Their construction violates Federal Circuit case law. See Exhibit A.

**4. "first elongated member"**

As with "outer sleeve," Defendants add the limitations of "external," "tubular," "pocket," and an "open end" or "opening large enough that an inner strap may be exposed" to their proposed construction. Their construction violates Federal Circuit case law. See Exhibit A.

**5. "first end" of the outer sleeve/first elongated member**

Defendants continue to seek the introduction of additional limitations by requesting the Court to adopt a definition that limits a "first end" to those that are "sized and shaped to be fed through a buckle." Defendants' construction is erroneous. See Exhibit A.

**6. "second end" of the outer sleeve/first elongated member**

8

Defendants continue to seek the introduction of additional limitations by requesting the Court to adopt a definition that limits a "first end" to those that are "connected to the buckle." The claim must determine the position of the "second end." Defendants' construction is erroneous. See Exhibit A.

### 7. "inner strap" and "second elongated member"

As with their other proposals, Defendants improperly include limitations into their construction. Limitations of position ("predominantly within the outer sleeve/first elongated member and exposed at least partially at the upper surface…. before the tightening mechanism") have no place in the instant claim construction and are improper. A plain and ordinary meaning should be used. See Exhibit A.

### 8. "connected to"

Defendants vary from the plain and ordinary meaning of this phrase to require a direct connection. Introduction of this additional limitation (direct, or as Defendants urge, "physical contact with") is improper.

### 9. Additional other claim terms

Defendants lump additional terms together in their brief, urging erroneous definitions that seek to introduce additional limitations. See, ECF No. 79, at 29-30. For those terms appearing in claims currently alleged to be infringed, plain and ordinary meaning is appropriate ("interconnected," "through," and "looped around the body part"). See Exhibit A.

### D. Means-Plus-Function Claim Limitations

#### 1. "means for circumferentially surrounding"

Defendants' construction (again) imports limitations from the specification and confuses the *single function* identified by the claim. Conspicuously, the construction in Defendants' brief

differs from that given in the Joint Statement. Compare ECF No. 66-1, Appendix B to ECF No. 79 at 36. Construction of a means-plus-function claim cannot only be a structure, must include the proper function, and must also include equivalents.

### 2. "means for compressing"

Defendants' construction (again) imports limitations from the specification and confuses the *single function* identified by the claim. Conspicuously, the construction in Defendants' brief differs from that given in the Joint Statement. Compare ECF No. 66-1, Appendix B to ECF No. 79 at 32. Construction of a means-plus-function claim cannot only be a structure, must include the proper function, and must also include equivalents.

### 3. "means for tensioning," "means for looping," and "means for fastening"

Defendants claim that the parties' disagreement over the construction of these phrases arises from CRI's inclusion of the phrase "and equivalents thereof" in its proposed constructions. Under the Patent Act, when construing a means-plus-function claim, such language is *required*: "such claim shall be construed to cover the corresponding structure, material, or acts described in the specification **and equivalents thereof**." 35 U.S.C. §112 (emphasis added). This is a much different analysis than a finding of infringement under the Doctrine of Equivalents (which argument CRI has preserved). Inclusion of "and equivalents thereof" in the claim construction is mandated by statute. See Exhibit A, sections highlighted in green.

### 4. "a first end for looping through a second end"

This phrase is not part of a claim currently accused to be infringed. Further, this is not a means-plus-function claim.

**5. "a restraining mechanism"**

This phrase is not part of a claim currently accused to be infringed. Further, this is not a means-plus-function claim.

**6. "means for securing" and "securing mechanism"**

Defendants fail to include the necessary language "and equivalents thereof" in their claim construction of "means for securing" as mandated by statute. The "securing mechanism" is not part of a claim currently accused to be infringed.

## III. CONCLUSION

The differences between CRI's proposed constructions and Defendants' proposed constructions are not the product of a reasonable dispute about legal principles or technical issues. Instead, the divergence between the parties' proposed constructions is a product of Defendants' made-for-litigation attempt to convince the Court to accept specific, narrow, and legally erroneous constructions. In contrast, CRI's constructions of the disputed terms and phrases properly adhere to the teachings of the Patents in Suit, follows controlling claim construction principles, and present constructions consistent with the plain and ordinary meaning of the disputed terms. The same cannot be said for Defendants' constructions.

Respectfully submitted,

/s/ William Y. Klett, III
William Y. Klett, III, Fed. ID No. 5610
Marcus A. Manos, NC Bar No. 21723
NEXSEN PRUET, LLC
P.O. Drawer 2426
Columbia, SC 29202-2426
Telephone:  803-771-8900
Fax:  803-253-8277
Email:  wklett@nexsenpruet.com
Email:  veslinger@nexsenpruet.com

/s/ H. Lee Falls, III
H. Lee Falls, III, NC Bar No. 36183
NEXSEN PRUET, LLC
The Carillon Building
227 W Trade St #1550
Charlotte, North Carolina, 28202
Telephone:  (704) 338-5379
Email:  lfalls@nexsenpruet.com

*Attorneys for Plaintiff*
*COMPOSITE RESOURCES, INC.*

Dated: December 22, 2017

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 22, 2017, Plaintiff Composite Resources, Inc. served **PLAINTIFF'S REPLY BRIEF TO DEFENDANTS' CLAIM CONSTRUCTION BRIEF** on Defendants Combat Medical Services, LLC and Alphapointe, pursuant to the parties' agreement, via electronic mail, to all counsel of record as follows:

sara.gillette@kutakrock.com
marcellus.chase@kutakrock.com
kimberly.attigliato@kutakrock.com
mikeadams@parkerpoe.com
nicholaslee@parkerpoe.com
lfalls@nexsenpruet.com
lbuckner@nexsenpruet.com

s/William Y. Klett, III
Attorney for the Plaintiff
