UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NORTH CAROLINA


COMPOSITE RESOURCES, INC.)
                        )
            Plaintiff, )
                        )
    v.                  )Civil Action No.
                        )3:17-cv-00072-FDW-DSC
COMBAT MEDICAL SYSTEMS,  )
LLC, and ALPHAPOINTE,    )
                        )
            Defendants. )


D E P O S I T I O N

O F

DR. MORTEN OLGAARD JENSEN,


taken pursuant to subpoena, held on the ninth

day of November, 2017, commencing at 10:34

a.m., at the law offices of Kutak Rock, LLP,

2300 Main Street, Suite 800, Kansas City,

Missouri, 64108-2416.

Case 3:17-cv-00072-MOC-DSC    Document 80-2    Filed 12/22/17    Page 1 of 12

APPEARANCES


On Behalf of COMPOSITE RESOURCES, INC.:

              Mr. William Y. Klett, III
              Nexsen Pruet
              1230 Main Street
              Suite 700 (29201)
              Columbia, South Carolina  29202
              803-253-8205
              wklett@nexsenpruet.com



On Behalf of COMBAT MEDICAL SYSTEMS, LLC, and
ALPHAPOINTE:

                 Ms. Sara Weilert Gillette
              Mr. Marcellus A. Chase
              Kutak Rock LLP
              2300 Main Street
              Suite 800
              Kansas City, Missouri  64108-2416
              816-502-4662
              sara.gillette@kutakrock.com
              marcellus.chase@kutakrock.com



Also present:
              Patrick Lawless
              Videographer

Case 3:17-cv-00072-MOC-DSC    Document 80-2    Filed 12/22/17    Page 2 of 12

A.  Uh-huh.

Q.  Did you have an opportunity to inspect the devices at issue in this case?

A.  No.

Q.  Okay.  So you haven't seen any tourniquets related to the litigation that you are testifying in?

A.  That's right.

Q.  Okay.  Your report states that you have been retained as an expert in other litigation.  Is that correct?

A.  That's right.

Q.  I do not want you to breach any of the confidentiality agreements that you are subject to.

A.  Uh-huh.

Q.  But can you generally describe the nature of these other cases?

A.  No.

Q.  You cannot?

A.  (Witness moves head from side to side).  No.

Q.  You have not testified or had your deposition taken in any of these cases.  Is that correct?

A.  That's correct.

Q.  Have you provided expert opinions in any of

these other cases?

A.   Yes.

Q.   Do any of these other cases deal with patent issues?

A.   Yes.

Q.   Okay.  And, again, I appreciate your obligations and I'm trying to tread very carefully so that you don't violate any of those obligations.

A.   Thank you.

Q.   Can you tell me the state of the art of tourniquets in 2005?

A.   I would not have the knowledge of the state of tourniquets in 2005 to answer that question.

Q.   Okay.  Can you tell me the state of the art of tourniquets in 2008?

A.   No.

Q.   What is your understanding of the phrase, person of ordinary skill in the art?

A.   It is a hypothetical person that would understand the claims in a patent text.

(THEREUPON, Deposition Exhibit No. 1 was marked for identification by Mr. Klett).

Q.   I will hand you what I have marked as Exhibit

patent is and what a person of ordinary skill in the art is.

Q. Okay.

(THEREUPON, Deposition Exhibit Nos. 4 and 5 were marked for identification by Mr. Klett).

Q. Dr. Morten, I have handed you what's been marked as Exhibit 4, which is U.S. Patent Number 7,842,067, and Exhibit 5, which is U.S. Patent 7,892,253. Are you familiar with those two patents?

A. I am.

Q. When is the first time that you saw Exhibit 4, the 067 patent?

A. That was at the beginning of September in 2017.

Q. Same question for the 253 patent marked as Exhibit 5?

A. Beginning of September 2017.

Q. Had you ever seen a tourniquet patent prior to September of 2017?

A. I do not recall.

Q. Tell me what the 067 patent discloses.

MS. GILLETTE: Objection. That is way abroad. That calls for an extreme narrative.

Q. Do you understand my question as someone who states that they are a person of ordinary skill in the art?

A. I'm sorry. What was your question?

MS. GILLETTE: Objection. Dr. Morten has not said that he's a person of ordinary skill in the art either. You are misstating his testimony.

Q. Can you tell me what the 067 patent discloses?

A. It discloses the function of a tourniquet.

Q. Based upon your familiarity with tourniquets, do you understand from this patent how a tourniquet functions?

A. There are some questions to the understanding of certain terms. So I cannot say that I, based on this patent alone, that I will understand the function of tourniquets.

Q. When you read the 067 patent, do you understand how to make or use the device that is disclosed in that patent?

MS. GILLETTE: Objection as to disclosed. It's vague.

Q. Please tell --

A. I don't.

Q. You don't understand how this works?

report, what someone, a person of ordinary skill in the art, what that person is. Correct?

A. Correct.

Q. Okay. What is the art at issue with regard to these patents?

A. Are you asking me of describing the person that has ordinary skills of the art or what the art of tourniquets?

Q. I'm asking you what the art is that the person would have ordinary skill in when it comes to --

A. Okay.

Q. -- reviewing these two patents?

A. For 067, a person of ordinary skills in the art would have three years of academic --

Q. Let me stop you right there because that's not -- I'm not focused on the person part.

A. Okay.

Q. I'm focused on the art part. I want you to describe for me what the art is that the person would have ordinary skill in. What is the art?

A. Mechanics, biomechanics, understanding forces and compression. For the 253 patent -- so what I just mentioned was for the two -- sorry --

067 patent. For the 253 patent, it becomes a little bit more involved since the buckle has some descriptions that require more understanding of fulcrums and force balances.

Q. Did you learn about all of those technical issues during your first-aid training in the military?

A. I did not.

Q. Okay. I'm going to let you answer the question you tried to answer earlier. If you could describe for me a person in the ordinary skill in the art of - and I'm going to use the broad term - tourniquets?

A. And are we referring to the 067 patent or the 253 patent?

Q. We will start with Exhibit 4, the 067 patent.

A. Okay. So that person would be having three years of academic education in a relevant field such as mechanical engineering, bioengineering or paramedic and/or three years of experience in that field or those fields, or any combination thereof. For the 253 patent, a person to be an ordinary -- of ordinary skill in the art would have a four-year education in biomechanics, biomedical engineering and two

intermediate bar needs to be a particular width?

A. I'm describing that to you as an expert, not a person of the ordinary skill of the art. And I mentioned before that a person of the ordinary skill of the art should not have to guess on the width of this intermediate bar.

Q. Is it your testimony that you are an expert for reasons other than being a person of ordinary skill in the art?

MS. GILLETTE: Objection. Vague.

MR. KLETT: There is nothing vague about that question.

A. I don't understand the question. Can you rephrase, please?

Q. You're an expert providing testimony here today on claim construction issues because you hold yourself out as a person of ordinary skill in the art. Correct?

MS. GILLETTE: Objection. Contrary to his previous testimony.

Q. Is that correct?

A. No.

Q. Okay. Are you a person of ordinary skill in the art of tourniquets?

A.   I am a person above the ordinary skill in the
art of tourniquets.

Q.   Okay.

          MR. KLETT:   Let's go off the record
and take a break.   We might be getting close.

          MR. LAWLESS:   Going off the record
at 12:11.

          (THEREUPON, a brief recess was
taken).

          MR. LAWLESS:   We are back on the
record at 12:34.

Q.   Just one more question, Dr. Jensen.   Did you
discuss the substance of your testimony today
during any of the breaks during your
deposition?

A.   We did.

Q.   Okay.   I don't have anything further.   Well,
can you tell me what those discussions
entailed?

A.   Well, we had discussed how the understanding of
disclosures versus claims.   Given that this is
my first time in deposition, I was unclear
about that in our earlier discussion.

Q.   Anything else?

A.   We discussed some topics that could be covered

does.

Q. And you have testified that you understand.
You have a definition. You understand what the
word, elevation, means?

A. Correct.

Q. And you have testified that you understand what
the word, transition, means?

A. Correct.

Q. You've testified that you understand what the
word, area, means?

A. Correct.

Q. But it's your testimony that you -- a person of
ordinary skill in the art would not understand
the phrase, elevation transition area?

A. Correct.

Q. Why is that?

A. Because an elevation transition area could be
many different things. In all of these
embodiments illustrated, it could be the plane
or transition area. It could also be taking a
path that is not the plane or transition area.
So it is ambiguous as to what the elevation
transition area is.

Q. You've testified today that you are not
personally a person of ordinary skill in the

art?

A. Right.

Q. You've testified that you're actually above the level of somebody of ordinary skill in the art?

A. Correct.

Q. So you're not testifying as a person of ordinary skill in the art. What are you testifying as to?

A. I am testifying as to someone that understands or knows what a person of the ordinary skill of the art would understand.

Q. And how do you know that?

A. In my experience with education and professional activities, I have that understanding of what the curriculum contains for students in engineering, medicine, and also what activities one might have in the field of paramedics or engineering.

Q. Do you have an understanding of what a person -- so you would know what a freshman in college, what they know?

A. Yes. And I would know what a sophomore would know, what a junior would know, what a senior would know. And, hence, would --

Q. And so you, just generally, so you would also