UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cv-00072-MOC-DSC

| | | |
|---|---|---|
| **COMPOSITE RESOURCES, INC.,** | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CLAIM CONSTRUCTION |
| Vs. | ) | ORDER |
| | ) | |
| **COMBAT MEDICAL SYSTEMS, LLC and** | ) | |
| **ALPHAPOINTE,** | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the court on the parties' respective motions and briefs (#s 78, 79, 80, 81, 82, 83) for the construction of certain claim language in U.S. Patent Nos. 7,842,067 ("the '067 Patent'") and 7,892,253 ("the '253 Patent'"). Plaintiff Composite Resources, Inc. ("CRI") has alleged that Defendants Combat Medical Systems, LLC and Alphapointe (collectively, "defendants") infringed these two patents. The court held a claim construction hearing on February 14, 2018. Having considered the briefing and arguments of counsel and reviewed the claims, specifications, and other relevant evidence, the court now construes the disputed terms at issue.

**I.     Background**

Both the '067 Patent and the '253 Patent (collectively, the "patents-in-suit") pertain to a tourniquet. The '067 Patent's invention is a tourniquet consisting of a pair of straps and a buckle that can be manipulated and tightened by a user (including a victim) with only one hand. The tourniquet also provides improved circulation stoppage through an inner tightening strap within a sleeve. The

1

'253 Patent's invention is the same, except that it allows for modifications to the buckle, such as teeth and planar transition areas, that make it harder for the tourniquet to inadvertently loosen.

  a.  The '067 Patent

On November 30, 2010, the United States Patent and Trademark Office (the "PTO") issued the '067 Patent, titled "Tourniquet and Method of Use," which names Mr. Mark Esposito as inventor. The patent describes a relatively small and lightweight tourniquet, comprised of a first elongated member including a buckle, and a second elongated member slidably connected to the first. In addition, a tensioning mechanism connected to the second member applies tension to create compressive force that restricts the flow of blood in the body part. The tensioning mechanism may be a windlass or a ratchet. The tourniquet is suited for emergency use, and may be applied, manipulated, and tightened by the wearer, even if the wearer is limited to using one hand.

  b.  The '253 Patent

On February 22, 2011, the PTO issued the '253 Patent, also titled "Tourniquet and Method of Use," which also names Mr. Esposito as inventor, along with Mr. Jonathan Bennett. This patent is for another tourniquet that is nearly identical to the one described in the '067 Patent. However, this tourniquet modifies the buckle to include one or more of a raised intermediate bar and one or more teeth attached to the bar, in order to better prevent the outer sleeve from inadvertently loosening and disengaging from the buckle.

  c.  The infringing product

CRI alleges that defendants infringed these two patents by making, using, importing, offering for sale, and selling its "Tactical Mechanical Tourniquet" ("the TMT Product"). Specifically, plaintiff alleges that defendant Combat Medical Systems, LLC, the primary distributor of defendant

Alphapointe, offers for sale and sells the TMT Product in this district and throughout the United

States. CRI alleges that the TMT Product is a tourniquet that restricts the flow of blood in a body

part, via looping around and circumferentially surrounding the body part and compressing it through

a slidably engaged mechanism. In doing so, CRI argues that the TMT Product violates at least claim

15 of the '067 Patent and at least claim 9 of the '253 Patent. CRI further argues that such sales of the

TMT Product by defendants has ongoing costs to CRI in loss of sales, loss of profits, loss of

royalties, and other irreparable injuries. Defendants argue that they have not infringed on any valid

patent claims, but that the patent claims forming the basis of plaintiff's case are invalid. Further,

defendants argue both patents are unenforceable due to fraud by the patentee in securing the patents.

## II.     Legal Standards

Patent infringement is the unauthorized production, use, sale, offer of sale, or importation of

any patented invention during the term of the patent. 35 U.S.C. § 271(a). An infringement analysis

entails two steps. In the first step, the court determines the meaning and scope of the patent claims

asserted to be infringed. In the second step, the trier of fact compares the properly construed claims

to the device accused of infringing. Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed.

Cir. 1995) aff'd, 517 U.S. 370 (1996). The purpose of claim construction is to determine the meaning

and scope of the patent claims alleged to be infringed. O2 Micro Int'l Ltd. v. Beyond Innovation

Tech. Co., Ltd., 521 F.3d 1351, 1360 (Fed. Cir. 2008). "It is a bedrock principle of patent law that

the claims of a patent define the invention to which the patentee is entitled the right to exclude."

Innova/Pure Water, Inc. v. Safari Water Filtration Sys., 381 F.3d 1111, 1115 (Fed. Cir. 2004).

Claim construction is a matter of law. Markman, 517 U.S. at 372. "It is well-settled that, in

interpreting an asserted claim, the court should look first to the intrinsic evidence of record, i.e., the

patent itself, including the claims, the specification and, if in evidence, the prosecution history. Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996) (citation omitted). While the Patent Office and patent examiners may give claims their broadest reasonable construction in reviewing patents and prospective patents, federal district courts are to give disputed claim terms their "ordinary and customary meaning," or "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." Phillips v. AWH Corp., 415 F.3d 1303, 1312, 1313 (Fed. Cir. 2005); see also Cuozzo Speed Techs., LLC v. Lee, 136 S. Ct. 2131, 2143 (contrasting the patent office's use of "the broadest reasonable construction standard" with the district court's use of the "ordinary meaning standard"); Prima Tek II, L.L.C. v. Polypap, S.A.R.L., 318 F.3d 1143, 1148 (Fed. Cir. 2003) (holding that there is a "heavy burden" in favor of using "the ordinary meaning of claim language as understood by one of ordinary skill in the art"); Thorner v. Sony Computer Entm't Am. LLC, 669 F.3d 1362, 1365-67 (Fed. Cir. 2012) (holding that a claim's words "are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history").

However, the preference for applying ordinary meanings in the district court may be overcome either "(1) where the patentee has chosen to be his or her own lexicographer by clearly setting forth an explicit definition for a claim term; or (2) where the term chosen by the patentee so deprives the claim of clarity that there is no means by which the scope of the claim may be ascertained from the language used." Prima Tek II, 318 F.3d at 1148 (citing Johnson Worldwide Assocs., Inc. v. Zebco Corp., 175 F.3d 985, 990 (Fed. Cir. 1999)). The inventor's lexicography

governs when the specification "reveal[s] a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess." Allergan, Inc. v. Barr Labs., Inc., 501 F. App'x 965, 969-70 (Fed. Cir. 2013) (citations and quotations omitted). The patentee must "clearly express an intent" to redefine the term, Helmsderfer v. Bobrick Washroom Equip., Inc., 527 F.3d 1379, 1381 (Fed. Cir. 2008), and the standard for determining whether an inventor has provided such clear intent is "exacting." Thorner, 669 F.3d at 1366; see also Ancora Technologies, Inc. v. Apple, Inc., 744 F.3d 732 (Fed. Cir. 2014) (holding that "[p]assing references that do not amount to a redefinition or disclaimer" are insufficient to overcome ordinary meaning).

With the ordinary meaning standard established, "[t]he starting point for any claim construction must be the claims themselves." Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1305 (Fed. Cir. 1999). "If the claim language is clear on its face, then . . . consideration of the rest of the intrinsic evidence is restricted to determining if a deviation from the clear language of the claims is specified." Interactive Gift Exp., Inc. v. Compuserve Inc., 256 F.3d 1323, 1331 (Fed. Cir. 2001). That said, the rest of the intrinsic evidence always plays a key role in providing context for the ordinary meaning of the claims, as a person of ordinary skill in the art is deemed to read the claim terms not only in the context of the particular claims in which the disputed terms appear, but also in the context of the entire patent. Phillips, 415 F.3d at 1313; see also Eon Corp. IP Holdings v. Silver Spring Networks, 815 F.3d 1314, 1320 (Fed. Cir. 2016) (holding that a claim term's ordinary meaning is not determined "in a vacuum" but "takes its definition from the context in which it was used by the inventor") (citations and quotations omitted); Medrad, Inc. v. MRI Devices Corp., 401 F.3d 1313, 1319 (Fed. Cir. 2005) (holding that the court "must look at the ordinary meaning in the context of the written description and the prosecution history") (citations and quotations omitted).

Said context may be provided by the specification, as the specification of a patent "is always highly relevant to the claim construction analysis." <u>Vitronics</u>, 90 F.3d at 1582. As such, the Federal Circuit has stated that it is "entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of the claims." <u>Phillips</u>, 415 F.3d at 1317. In some cases, the inventor may provide within the specification a special definition of a claim term which differs from the term's usual meaning; if so, "the inventor's lexicography governs." <u>Id.</u> at 1316. The inventor also may disclaim or disavow claim scope within the specification. Where "the inventor has dictated the correct claim scope . . . the inventor's invention, as expressed in the specification, is regarded as dispositive." <u>Id.</u> Specifications are also key if a claim element is recited in means-plus-function format, as such a claim's specification "must contain sufficient descriptive text by which a person of skill in the field of the invention would know and understand what structure corresponds to the means limitation." <u>Enfish, LLC v. Microsoft Corp.</u>, 822 F.3d 1327 (Fed. Cir. 2016) (citations and quotations omitted).

However, while a district court may read patent claims in light of the specification, the court may not read limitations from the specification into the claim itself or read the specification to replace the claim. <u>See</u> <u>United States v. Adams</u>, 383 U.S. 39, 48-49 (1966) ("While the claims of a patent limit the invention, and specifications cannot be utilized to expand the patent monopoly, it is fundamental that claims are to be construed in the light of the specifications and both are to be read with a view to ascertaining the invention.") (internal citations omitted); <u>see also</u> <u>Prima Tek II</u>, 318 F.3d at 1148 (holding that "limitations may not be read into the claims from the written description") (citation omitted); <u>SanDisk Corp. v. Memorex Prod., Inc.</u>, 415 F.3d 1278, 1286 (Fed. Cir. 2005) (holding that "it is axiomatic that without more the court will not limit claim terms to a preferred

embodiment described in the specification"); Tempo Lighting, Inc. v. Tivoli, LLC, 742 F.3d 973, 977 (Fed. Cir. 2014) (holding that "[i]n claim construction, this court gives primacy to the language of the claims, followed by the specification"). Even if every depicted embodiment of an invention shows a limitation, that alone is insufficient to overturn a claim's plain meaning. See Unwired Planet, LLC v. Apple Inc., 829 F.3d 1353, 1359 (Fed. Cir. 2016) (holding that it is "not enough that the only embodiments, or all of the embodiments, contain a particular limitation to limit claims beyond their plain meaning") (quotations and citations omitted). Admittedly, "there is sometimes a fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specification." Comark Communications, Inc. v. Harris Corp., 156 F.3d 1182, 1186 (Fed. Cir. 1988). But while the specification may be able to supply understanding of unclear terms, it can never override the clear meaning of the claim terms. See E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co., 849 F.2d 1430, 1433 (Fed. Cir. 1988).

In addition to the specification, the court also may examine the patent's prosecution history for context when construing claim terms. Markman v. Westview Instruments, Inc., 52 F.3d 967, 980 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996). "Like the specification, the prosecution history provides evidence of how the [Patent and Trademark Office] and the inventor understood the patent." Phillips, 415 F.3d at 1317; see also Tempo Lighting, Inc., 742 F.3d at 977 (holding that "the prosecution history, while not literally within the patent document, serves as intrinsic evidence for purposes of claim construction"). The prosecution history also may be helpful in determining whether the inventor disclaimed any particular interpretation during the prosecution of the patent. See Chimie v. PPG Indus., Inc., 402 F.3d 1371, 1384 (Fed. Cir. 2005) (holding that the prosecution history's purpose "is to exclude any interpretation that was disclaimed during prosecution" in order to prevent

a term from being construed one way in the application and a different way against an accused infringer); see also DeMarini Sports, Inc. v. Worth, Inc., 239 F.3d 1314, 1323 (Fed. Cir. 2001) (holding that the prosecution history "is considered to determine whether or not there were any express representations made in obtaining the patent regarding the scope and meaning of the claims"). When determining whether a party has disclaimed a particular interpretation, the court inquires "whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter." PODS, Inc. v. Porta Stor, Inc., 484 F.3d 1359, 1368 (Fed. Cir. 2007). That said, while it can be helpful in that respect, the prosecution history "often lacks the clarity of the specification and thus is less useful for claim construction purposes." Phillips, 415 F.3d at 1317. For example, while prior art may be cited as part of the prosecution history and thus qualify as intrinsic evidence, it merits little weight if "it was not created by the patentee in attempting to explain and obtain the patent." Acumed LLC v. Stryker Corp., 483 F.3d 800, 809 (Fed. Cir. 2007) (quotations and citations omitted). Finally, the prosecution history also may not "enlarge, diminish, or vary" the claims themselves. Chimie, 402 F.3d at 1380-82 (quotation omitted).

In addition to examining the intrinsic evidence, the court may also consider certain extrinsic evidence, "including expert and inventory testimony, dictionaries, and learned treatises." Markman, 52 F.3d at 980. While extrinsic evidence can shed light on claim meaning, it is "less significant than the intrinsic record in determining the legally operative meaning of claim language" and "is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." Phillips, 415 F.3d at 1317, 1319. Indeed, while dictionaries, treatises, and industry practice "are often important in interpreting claims," they may not "contradict claim meaning that is unambiguous in light of the intrinsic evidence." ArcelorMittal France v. AK Steel

Corp., 700 F.3d 1314, 1320 (Fed. Cir. 2012) (citations and quotations omitted); see also Phillips, 415 F.3d at 1322-23 (holding that courts may "rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents") (quoting Vitronics, 90 F.3d at 1584 n. 6).

Additionally, expert testimony "can be useful to a court for a variety of purposes, such as to provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." Phillips, 415 F.3d at 1318. However, "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court." Id. Further, the court must disregard any expert testimony "that is clearly at odds with . . . the written record of the patent." Key Pharms. v. Hercon Labs. Corp., 161 F.3d 709, 716 (Fed. Cir. 1998).

Claims may also require analysis for indefiniteness, as indefiniteness is "inextricably intertwined with claim construction." Energizer Holdings, Inc. v. International Trade Com'n, 435 F.3d 1366, 1368 (Fed. Cir. 2006). "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." Dow Chemical Co. v. Nova Chemicals Corp. (Canada), 803 F.3d 620, 625 (Fed. Cir. 2015), cert. denied, 136 S. Ct. 2452 (2016) (citing Nautilus, Inc. v. Biosig Instruments, Inc., 134 S. Ct. 2120, 2124 (2014)); see also Interval Licensing, LLC v. AOL, Inc., 766 F.3d 1364, 1371-73 (Fed. Cir. 2014), cert. denied, 136 S. Ct. 59 (2015) (holding that a single example of the term "unobtrusive manner" in the specification did not outline the claims to a skilled artisan with reasonable certainty). Definiteness requires the

court to weigh "inherent limitations of language," the fact that patents are addressed to people who are "skilled in the relevant art" instead of lawyers or the public, and "some modicum of uncertainty" against the precision required to "afford clear notice of what is claimed" and thereby allow the public to determine what inventions are still possible. Nautilus, 134 S. Ct. at 2128-29 (internal citations and quotations omitted). As such, the standard "mandates clarity, while recognizing that absolute precision is unattainable." Id. at 2129; see also Minerals Separation, Ltd. v. Hyde, 242 U.S. 261, 270 (1916) ("the certainty which the law requires in patents is not greater than is reasonable, having regard to their subject-matter"). Also, indefiniteness is often analyzed prior to construing claims, since "[i]f a claim is indefinite, the claim, by definition, cannot be construed." Enzo Biochem, Inc. v. Applera Corp., 599 F.3d 1325, 1332 (Fed. Cir. 2010).

Finally, claims may be specifically analyzed for construction under the Patent Act as "means-plus-function" claims. Specifically, "[a]n element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112, ¶ 6. Thus, patentees may "express a claim limitation by reciting a function to be performed rather than by reciting structure for performing that function," subject to "specific constraints on how such a limitation is to be construed, namely, by restricting the scope of coverage to only the structure, materials, or acts described in the specification as corresponding to the claimed function and equivalents thereof." Williamson v. Citrix Online, LLC, 792 F.3d 1339, 1347 (Fed. Cir. 2015) (citing Northrop Grumman Corp. v. Intel Corp., 325 F.3d 1346, 1350 (Fed. Cir. 2003)).

Constructing a means-plus-function claim is a two-step process. "First, the court must determine the claimed function. Second, the court must identify the corresponding structure in the written description of the patent that performs that function." Noah Sys., Inc. v. Intuit Inc., 675 F.3d 1302, 1311 (Fed. Cir. 2012) (citing Applied Med. Res. Corp. v. U.S. Surgical Corp., 448 F.3d 1324, 1332 (Fed. Cir. 2006)). Courts construct the function based on claim language. Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc., 296 F.3d 1106, 1113 (Fed. Cir. 2002). It is improper to narrow the scope of the function beyond what the claim language says, and equally improper to broaden the scope by ignoring clear limitations in the claim language. Id. (citation omitted). Ordinary claim construction principles govern interpreting the claim language used to describe the function. Id. When determining corresponding structures, a structure qualifies if the specification or prosecution history "clearly links or associates that structure to the function recited in the claim." B. Braun Med., Inc. v. Abbott Labs., 124 F.3d 1419, 1424 (Fed. Cir. 1997); see also Atmel Corp. v. Info. Storage Devices, Inc., 198 F.3d 1374, 1382 (Fed. Cir. 1999) (holding that "[a]ll one needs to do in order to obtain the benefit of [Section 112] is to recite some structure corresponding to the means in the specification . . . so that one can readily ascertain what the claim means and comply with the particularity requirement" of Section 112); Johnston v. IVAC Corp., 885 F.2d 1574, 1580 (Fed. Cir. 1989) (holding that Section 112 "operates to *cut back* on the types of *means* which could literally satisfy the claim language" and thereby "restricts the scope of the literal claim language" by requiring the structures to appear in the specification) (emphasis in original).

### III.    Disputed Terms

Pursuant to the Local Patent Rules, the parties have both identified the following terms for construction for the '067 Patent: means for circumferentially surrounding; means for compressing;

slidably engaging; means for tensioning; means for looping; connected to; upon passing the means for circumferentially surrounding through the means for looping, a portion of the means for compressing also passes through the means for looping; a gap is located between portions of the means for compressing at the means for looping when the means for circumferentially surrounding is applied to the body part; means for fastening; and means for securing. The parties have also both idenitifed the following terms for construction for the '253 Patent: outer sleeve; first end (of outer sleeve); second end (of outer sleeve); connected to; second end of the outer sleeve; first lateral side; second lateral side; intermediate bar; first sidewall; second sidewall; top surface; bottom surface; first end (lateral side); second end (lateral side); interconnecting; first elevation transition areas; second elevation transition areas; first end of the outer sleeve; inner strap; through; slidable engagement; first elongated member; looped around the body part; and elevation transition areas.

## IV.    Claim Construction of Disputed Terms in the '067 Patent

The court will first consider the terms identified for construction in the '067 Patent.

### 1.  *Means for circumferentially surrounding*

Plaintiff argues for a construction of having a function "to entirely wrap around a body part or limb; wholly surround or encircle a limb or body part," while having a corresponding structure of "first elongated member/outer sleeve/strap and equivalents thereof." Defendants argue for a construction of a function "of circumferentially surrounding a body part" and a second function of "passing through the means for looping and attaching to itself," and a corresponding structure of "an outer sleeve formed either from two panels comprising an upper panel and a lower panel where the edges of the panels are connected (e.g. by sewing, etc.) to form a pocket or from a single piece of material that is folded over and seamed thereby forming a pocket."

As for the first function, plaintiff and defendants' definitions are relatively similar. After reviewing the claims, the court will construe a function of "to completely encircle a body part." This is consistent with the plain meaning of "circumferentially surrounding," as well as the context of the claims themselves, as they repeatedly reference completely encircling all of a body part with straps, elongated members, and equivalent mechanisms.

The court has considered defendants' argument for a second function of "passing through the means for looping and attaching to itself." Defendants' argument appears to be based on the language in the claims talking about how the means for circumferentially surrounding can be looped and attach to itself via the means for looping and means for fastening discussed later, and in the specification, where the means for circumferentially surrounding can be portrayed as passing through the means for looping and attaching to itself. However, adding a second function appears to be expanding the function of the means for circumferentially surrounded beyond the single definition in the claims and improperly mingling with the functions of the means for looping and means for fastening. Further, defining a function based on the specification instead of the language of the claims is improper. See Cardiac Pacemakers, 296 F.3d at 1113 (holding that it is improper to limit a function beyond what is stated in the claim); In re Teles AG Informationstechnologien, 747 F.3d 1357, 1367-68 (Fed. Cir. 2014) ("When construing functional claims under § 112 ¶ 6, the statute does not permit limitation of a means-plus-function claim by adopting a function different from that explicitly recited in the claim") (citation and quotation omitted); Gemstar-TV Guide Intern., Inc. v. International Trade Com'n, 383 F.3d 1352, 1361 (Fed. Cir. 2004) ("We consult the claim language to determine the function of the limitation"). As a result, the court finds that the sole function described in the claims is the plain meaning of "to completely encircle a body part."

As for the corresponding structure, the court finds several corresponding structures in the written description and figures, including a strap, a sleeve, and an elongated member (with accompanying examples listed that include a belt, rope, tubing, etc.). The '067 Patent, Doc. #78-1, pg. 12-13, 16. These structures have thus been clearly linked to the means for circumferentially surrounding, and they sharply contrast with defendants' proposed specific structure of "an outer sleeve formed either from two panels comprising an upper panel and a lower panel where the edges of the panels are connected (e.g., by sewing, etc.) to form a pocket or from a single piece of material that is folded over and seamed thereby forming a pocket." Indeed, nowhere in the claims is a structure described with such specificity as what defendants provide; only by reading limitations in from the specification could the court arrive at such a construction, and the court declines to do so. As such, the court finds that the proper corresponding structure is "first elongated member, outer sleeve, strap, or equivalents thereof."

2. *Means for compressing*

Plaintiff argues for a construction of having a function "to apply compressive force, pressure; to squeeze or constrict" with a corresponding structure of "second elongated member/inner tightening member/inner strap and equivalents thereof." Defendants argue for a construction of having a function "of compressing a body part" and a corresponding structure of "elongated material predominantly within the outer sleeve/first elongated member and exposed at least partially at the upper surface of the outer sleeve/first elongated member before the restraining mechanism and anchored to the outer sleeve at or proximate to the tip of the outer sleeve."

For the function analysis, plaintiff and defendants' definitions appear to be similar to one another. After reviewing the claims and specification, the court shall construe a function of "to apply

compressive force to a body part." This is in keeping with the plain and ordinary meaning of compressing, and with the context of the patent itself which repeatedly describes applying said compressive force to a body part for the purpose of restricting blood flow to limit blood loss. As for a corresponding structure, the specification clearly links the means for compressing to an inner strap, a second elongated member, and other similar structures. The '067 Patent, Doc. 78-1, pg. 12-13. Again, defendants' construction is unsupported by the claims, and only by reading limitations in from the specification could the court arrive at such a construction As such, the court finds the corresponding structure to be "an inner strap, second elongated member, or equivalents thereof."

   *3. Means for tensioning*

   Plaintiff argues for a construction of having a function "to apply a tensile force; to tighten, strain, or stretch tight" and a corresponding structure of "a wind lass (74) or ratchet mechanism (106) and equivalents thereof." Defendants argue for a construction of a function "of tensioning the inner strap" and corresponding structure of "windlass or ratchet."

   Once again, plaintiff and defendants' functions are quite similar. After consulting the claims, the court finds the appropriate construction for function is "to apply tensile force to tighten." Such definition is consistent with the plain and ordinary meaning of tensioning and with the purpose of the means for tensioning in the context of the claim language, as tightening is needed to properly apply the aforementioned compressive force. As for the corresponding structure, plaintiff and defendants again offer similar constructions that include a windlass or ratchet. The patent explicitly and clearly links the use of either a windlass or ratchet "to apply a tensile force" and "thus tighten[] the tourniquet." The '067 Patent, Doc. 78-1, pg. 15. Defendants agree that a windlass or ratchet is appropriate, but object to including "equivalents thereof" in the construction, arguing that it is overly

broad and adds far too much to the scope of the invention. The court disagrees, as precedent and Section 112 both show that "equivalents thereof" is perfectly acceptable for means-plus-function construction, and whether a device qualifies as an "equivalent thereof" is not an issue for this stage of the proceedings. See Media Rights Technologies, Inc. v. Capital One Financial Corp., 800 F.3d 1366, 1372 (Fed. Cir. 2015) (holding that means-plus-function claims are construed to cover corresponding structures "and equivalents thereof"); Williamson, 792 F.3d at 1359 (citing 35 U.S.C. § 112, ¶ 6). Thus, the court finds the appropriate corresponding structure for this means is "a windlass, ratchet, or equivalents thereof."

    *4. Means for looping*

    Plaintiff argues for a construction of having a function "to form an oval or circular ring of the means for circumferentially surrounding" and corresponding structure of "buckle or ring and equivalents thereof."  Defendants argue for a construction of function "of looping a portion of the means for circumferentially surrounding a body part" and corresponding structure of "buckle or ring."

    Once again, plaintiff and defendants' definitions for function are similar. After reviewing the claims, the court finds that the appropriate construction is "to form a circular loop of the means for circumferentially surrounding," as this is consistent with the plain and ordinary meaning of the claims and the purpose of the claim in the context of the patent as a whole. As for the appropriate corresponding structure, the patent explicitly links the means for looping to a buckle or ring. Doc. #78-1, pg. 11. Defendants again express resistance to including "equivalents thereof" alongside the named corresponding structures. For the reasons described above with the means for tensioning, the court finds "equivalents thereof" to be appropriate for inclusion in the construction. Media Rights,

800 F.3d at 1372; <u>Williamson</u>, 792 F.3d at 1359 (citing 35 U.S.C. § 112, ¶ 6). As such, the court finds that the appropriate corresponding structure is "a buckle, ring, or equivalents thereof."

5. *Means for fastening*

Plaintiff argues for a construction of function "to connect the overlapping portions of the means for circumferentially surrounding" and corresponding structure "hook and loop structures (50) and equivalents thereof." Defendants argue for a construction of function "of fastening the outer sleeve to itself" and corresponding structure "hook and loop structures on the outer surface of the outer sleeve; buttons, snaps, transversive straps."

After reviewing the language of the claims, the court finds that the appropriate construction is "to join the overlapping portions of the means for circumferentially surrounding," as this is consistent with the plain and ordinary meaning of the claims and the rest of the patent as a whole. As for corresponding structure, the patent clearly links the means for fastening to hook and loop structures, as potential means for circumferentially surrounding (such as an outer sleeve or a first elongated member) all feature hook and loop fasteners. The '067 Patent, Doc. 78-1, pg. 12, 17. As such, the court finds the appropriate corresponding structure to be "hook and loop structures or equivalents thereof."

6. *Means for securing*

Plaintiff argues for a construction of function "to make firm or fast, or fix in position; to secure or prevent from unwinding" and corresponding structure "hooked catch or securing strap and equivalents thereof." Defendants argue for a construction of function "of securing the windlass" and corresponding structure "hooked catch, securing strap, or combination hooked catch and securing strap."

17

After reviewing the claims, the court finds that the appropriate function is "to secure in position," as this is consistent with the language of the claims and the patent overall. The '067 Patent, Doc. 78-1, pg. 14 (stating that a means for securing "secur[es] or prevent[s] the windlass from unwinding" and thus "maintains the wound position"). As for corresponding structure, the specification explicitly links "a hooked catch," "hooked catches," and "a securing strap" to the function of securing in position. Id. As such, the court finds that the corresponding structure is "a securing strap, hooked catch, hooked catches, or equivalents thereof."

### 7. *Slidably engaging*

Plaintiff argues for a construction of having its plain and ordinary meaning ("capable of sliding when coming together"). Defendants argue for a construction of "the inner strap/second elongated member is fastened inside and at the tip (or proximate thereto) of the outer strap/first elongated member, but is not fastened at the center or middle of the outer strap/first elongated member, allowing the inner strap/second elongated member to smoothly move within the pocket of inner space of the outer strap/first elongated member." Defendants argue that the dictionary definitions of "slidably" and "engaging" mixed together does not equate to a proper construction of "slidably engaging," and that some sort of attachment is required for slidable engagement.

After careful review of the patent claim, specification, and other intrinsic evidence, the court finds no reason to use a construction beyond the term's plain and ordinary meaning. Plaintiff did not become their own lexicographer and clearly state a separate, explicit definition; nor is a term like "slidably engaging" so devoid of clarity that the scope of the claim cannot be ascertained. Prima Tek II, 318 F.3d at 1148 (citation omitted). While defendants argue that "slide within" is used repeatedly and that should guide the construction, and that attachment is necessary, slidable engagement may

incorporate sliding within or slidably attaching but not necessarily be limited by examples in the specification that show otherwise. Such limitations, along with others suggested by defendants' construction, is improper in claim construction. Id.; SanDisk Corp., 415 F.3d at 1286; Unwired Planet, LLC, 829 F.3d at 1359. As such, the court will apply the term's plain and ordinary meaning and find for a construction of "capable of sliding when coming together."

8. *Upon passing the means for circumferentially surrounding through the means for looping, a portion of the means for compressing also passes through the means for looping*

Plaintiff argues for a construction of having its plain and ordinary meaning using the defined means-plus-function terms above. Defendants argue for a construction of "simultaneously, but not before, causing the outer sleeve to enter and move through the buckle or ring also causes the inner strap to enter and move through the buckle or ring." Defendants argue that plain and ordinary meaning cannot work, and that construction based purely on means-plus-function terms fails to account for key words like "upon" and "passes through." Plaintiff argues that defendants' construction introduces limitations of time that are unsupported by the claims.

After reviewing the patent and claims, the court agrees that plain and ordinary meaning of the already-construed means-plus-function terms will suffice. However, the court also agrees that plain and ordinary meaning should be used for the remaining words in the term, which will lead to a construction somewhat similar to defendants' when accounting for the terms "upon" and "passes through." The court is uncertain why plaintiff objects so strenuously to defendants' construction including a so-called limitation of time, as "upon" generally relates to time and includes definitions

like "on the occasion of" and "immediately or very soon after," both of which are consistent with defendants' construction including "simultaneously." See http://www.dictionary.com/browse/upon.

Review of the patent also shows that plaintiff did not explicitly name a definition for "upon" or otherwise specifically disclaim a definition. As such, based on how the invention is described in the patent and claims, a person of ordinary skill in the art would undoubtedly interpret this term to mean that the means for compressing is passing through at roughly the same time as part of the means for circumferentially surrounding does. The court will thus interpret this claim with plain and ordinary meaning for all terms, including the established constructions of the means-plus-function terms above, and finds that the appropriate construction is "as the first elongated member, outer sleeve, strap, or equivalents thereof goes through a buckle, ring, or equivalents thereof, part of the second elongated member, inner tightening member, inner strap, or equivalents thereof also goes through the buckle, ring, or equivalents thereof immediately or very soon thereafter."

9. *A gap is located between portions of the means for compressing at the means for looping when the means for circumferentially surrounding is applied to the body part*

Plaintiff argues for a construction of its plain and ordinary meaning using the defined "means plus function" terms above, and that "gap" should be defined as having its plain and ordinary meaning of "a break, opening, or separation." Defendants argue that this term is incapable of construction, since when these claim terms are read in light of the specification and the prosecution history, they fail to inform with reasonable certainty those skilled in the art about the scope of the invention. Defendants argue that there is no description of this element, and that plain and ordinary meaning fails since "gap" could mean a variety of things.

After reviewing the claims and specification, the court finds plain and ordinary meaning will suffice. All means-plus-function terms used here have been successfully constructed, and "gap" is not a word that is so devoid of clarity that its meaning cannot be ascertained. Prima Tek II, 318 F.3d at 1148 (citation omitted). As a result, the court finds the proper construction for this term is "an opening is located at the buckle, ring, or equivalents thereof between portions of the inner strap, second elongated member, and equivalents thereof when the first elongated member, outer sleeve, strap, or equivalents thereof is applied to the body part."

*10. Connected to (means for looping)*

Plaintiff argues for a construction of having its plain and ordinary meaning ("joined or linked together"). Defendants argue for a construction of "fastened to." After careful review of the patent claim, specification, and other intrinsic evidence, the court finds no reason to use a construction beyond the term's plain and ordinary meaning. Plaintiff did not become their own lexicographer and clearly state a separate, explicit definition; nor is a simple term like "connected to" so devoid of clarity that the scope of the claim cannot be ascertained. Prima Tek II, 318 F.3d at 1148 (citation omitted). Further, "fastening" implies a narrower scope than the plain and ordinary meaning of the term would otherwise suggest. As such, the court finds that the proper construction is the term's plain and ordinary meaning of "united, joined, or linked together."

**V.     Claim Construction of Disputed Terms in the '253 Patent**

Next, the court will consider the terms identified for construction for the '253 Patent.

*1. Outer sleeve*

Plaintiff argues for a construction of its plain and ordinary meaning ("a part designed to fit over an arm"). Defendants argue for a construction of "an external tubular cover with a pocket of

interior space and at least one open end or opening large enough that an inner strap may be exposed." Defendants' argument is that the outer sleeve must have an opening large enough for an inner strap to be exposed and an interior space large enough for the inner strap; otherwise, the tourniquet would not work, and their construction is thus consistent with a working tourniquet.

After careful review of the patent claim, specification, and other intrinsic evidence, the court finds no reason to use a construction beyond the term's plain and ordinary meaning, albeit with a slight modification based on the patent as a whole. Plaintiff did not become their own lexicographer and clearly state a separate, explicit definition; nor is a simple term like "outer sleeve" so devoid of clarity that the scope of the claim cannot be ascertained. Prima Tek II, 318 F.3d at 1148 (citation omitted). Further, defendants' construction incorporates a litany of additions that strain the plain meaning of "outer sleeve." Indeed, defining a term like "outer sleeve" to require an "opening large enough that an inner strap may be exposed" would appear to be reading a limitation into the claim from the specification, which is improper in claim construction. Id.; SanDisk Corp., 415 F.3d at 1286; Unwired Planet, LLC, 829 F.3d at 1359.

The term's ordinary meaning as stated by plaintiff is "a part that fits over an arm." While such a construction may suffice, the court finds a more accurate construction based on the language of the claims and the patent overall is "a part that fits over a body part." In theory, the tourniquet may be used on a person's arm, but may also work with other limbs. Specifically, claim 9 references the tourniquet described in full in claim 2, in which the outer sleeve is "looped around the body part" and connected "around the body part." The '253 Patent, Doc. 78-2, pg. 18.  Given the intrinsic evidence of the claims and the fact that a claim's meaning is read in the context in which the

inventor used it in the patent, <u>Eon Corp.</u>, 815 F.3d at 1320, the court finds that a proper construction for the term "outer sleeve" is "a part that fits over a body part."

## 2. *First end (outer sleeve)*

Plaintiff argues for a construction of its plain and ordinary meaning ("the part of an area that lies at the boundary, which part precedes all others in order"). Defendants argue for a construction of "the tip or extremity of the outer sleeve or first elongated member, opposite the second end, and sized and shaped to be fed through the buckle." Defendants argue that the first end must be sized and shaped to feed through the buckle because the invention requires that to work.

However, the court once again finds that plain meaning will suffice, as the term "first end" is fairly self-explanatory. While defendants argue that the first end must be sized and shaped to feed through the buckle to ensure a workable device, that is already accounted for in the rest of the claim describing the outer sleeve as going "through the buckle" in order to wrap around the body part in question. Naturally, the outer sleeve would be unable to go through the buckle unless the sleeve was sized to fit, so it is unclear why the court should read such a limitation into this term that is covered by the rest of the claim. As a result, the court will construe the term "first end" according to its plain and ordinary meaning. Plaintiff suggests an appropriate plain meaning is "the part of an area that lies at the boundary, which part precedes all others in order." As such an interpretation is in keeping with the claims, specification, and other intrinsic evidence, the court will adopt that construction.

## 3. *Second end (outer sleeve)*

Plaintiff argues for a construction of its plain and ordinary meaning ("the part of an area that lies at the boundary, which part is next in order to the first"). Defendants argue for a construction of "the tip or extremity of the outer sleeve or first elongated member, opposite the first end, and

connected to the buckle." For the same reasons outlined above in analyzing "first end," the court finds that the appropriate construction for "second end" is "the part of an area that lies at the boundary, which part is next in order to the first."

### 4. Connected to (outer sleeve)

Plaintiff argues for a construction of its plain and ordinary meaning ("joined or linked together"). Defendants argue for a construction of "fastened to." In support of their argument, defendants note that plaintiff relies purely on dictionary definitions, while defendants' construction is instead based on the specification. Plaintiff argues that the patent does not require a direct connection like fastening, and that reading the patent as fastened based on a specification is reading a limitation in from the specification, not using the specification to resolve an unclear definition.

The court agrees with plaintiff. Once again, there is no reason to depart from the plain and ordinary meaning of a simple term like "connected to," <u>Prima Tek II</u>, 318 F.3d at 1148 (citation omitted), and while a particular fastening device may be depicted in the specification, there is no reason to read that limitation into the claim. <u>SanDisk Corp.</u>, 415 F.3d at 1286; <u>Unwired Planet, LLC</u>, 829 F.3d at 1359. As a result, the court finds the appropriate construction of "connected to" is the plain and ordinary meaning of "united, joined or linked together," as such construction is consistent with the claims, specification, and rest of the patent as a whole.

### 5. First lateral side

Plaintiff argues for a construction of its plain and ordinary meaning ("a bounding surface of an object on the side, as opposed to an end, that precedes all others in order"). Defendants argue for a construction of "a rigid, solid-material part of the buckle connected to the second end of the outer sleeve/first elongated member parallel to the intermediate bar and situated at the side of the

intermediate bar opposite the second lateral side and forming a first port for the outer sleeve to be fed through."

Again, the court finds no reason to depart from the term's plain and ordinary meaning, which is found in plaintiff's construction. Defendants' construction once again improperly reads limitations like "rigid" and "solid-material" into the term, which the court finds is improper in claim construction. SanDisk Corp., 415 F.3d at 1286; Unwired Planet, LLC, 829 F.3d at 1359. As a result, the court finds the appropriate construction is the term's plain and ordinary meaning of "a bounding surface of an object on the side, as opposed to an end, that precedes all others in order."

*6. Second lateral side*

Plaintiff argues for a construction of its plain and ordinary meaning ("a bounding surface of an object on the side, as opposed to an end, which surface is next in order to the first"). Defendants argue for a construction of "a rigid, solid-material part of the buckle parallel to the intermediate bar and situated at the side of the intermediate bar opposite the first lateral side and forming a second port for the outer sleeve to be fed through." The court adopts the same reasoning as when constructing "first lateral side" above, and finds that the appropriate construction is the term's plain and ordinary meaning of "a bounding surface of an object on the side, as opposed to an end, which surface is next in order to the first."

*7. Intermediate bar*

Plaintiff argues for a construction of its plain and ordinary meaning ("a middle straight piece, longer than it is wide"). Defendants argue for a construction of "a rigid, solid-material part of the buckle, longer than it is wide." Defendants note that plaintiff's own definitions support this

construction, as defendants point out that plaintiff's Exhibit O (Doc. 78-15) lists two definitions that describe a bar as solid or rigid.

Here, the court finds that reading "rigid" or "solid" into this term's construction is tantamount to reading a limitation into the claim, notwithstanding potential available dictionary definitions. The court also notes that there are a wide array of "bars" that are hollow or more flexible than "rigid" or "solid" would suggest. As such, to avoid improperly limiting the term, the court finds that the appropriate construction is the first dictionary definition found in Exhibit O, which is "a straight piece . . . that is longer than it is wide." Plaintiff's Exhibit O, Doc. 78-15. Combined with "intermediate" having a plain and ordinary meaning of "middle," the court finds the appropriate construction is "a middle straight piece that is longer than it is wide," as this construction is consistent with the claims, specification, and rest of the patent as a whole.

### 8. *First sidewall*

Plaintiff argues for a construction of its plain and ordinary meaning ("a wall forming the side of an object that precedes all others in order"). Defendants argue for a construction of "the side of the intermediate bar closest to the first lateral side."

Here, the court finds no reason to use anything other than plain and ordinary meaning, as this term does not have a separate, explicit definition, and is not so devoid of clarity that the scope of the claim cannot be ascertained; as such, plain and ordinary meaning will suffice. Prima Tek II, 318 F.3d at 1148 (citation omitted). Defendants' construction appears to be unnecessarily specific and once again based on reading a limitation in from an example in the specification. The court finds that, in the context of the claims and other intrinsic evidence, the term's plain and ordinary meaning is

consistent with plaintiff's proposed construction; as such, the proper construction of this term is "a wall forming the side of an object that precedes all others in order."

9. *Second sidewall*

Plaintiff argues for a construction of its plain and ordinary meaning ("a wall forming the side of an object, which side is next in order to the first"). Defendants argue for a construction of "the side of the intermediate bar closest to the second lateral side." Here, the court adopts its reasoning above in analyzing "first sidewall" and finds that plaintiff's proposed construction of "a wall forming the side of an object, which side is next in order to the first" is appropriate.

10. *Top surface*

Plaintiff argues for a construction of its plain and ordinary meaning ("the highest part of an exterior boundary of an object"). Defendants argue for a construction of "the uppermost surface of the intermediate bar of the buckle."

Here, the court once again finds that plain and ordinary meaning suffices, since no explicit and separate definition was used, and "top surface" is such a straightforward, self-explanatory term that it cannot be said to be devoid of clarity. <u>Prima Tek II</u>, 318 F.3d at 1148 (citation omitted). As defendants' proposed construction appears to narrow the definition to something specific and more narrow than its plain and ordinary meaning, the court finds that the appropriate construction is "the highest part of an exterior boundary of an object."

11. *Bottom surface*

Plaintiff argues for a construction of its plain and ordinary meaning ("the underside of an exterior boundary of an object"). Defendants argue for a construction of "the underside surface of the intermediate bar of the buckle." For the reasons outlined above in analyzing "top surface," the

court finds that the appropriate construction here is "the underside of an exterior boundary of an object."

### 12. First end (lateral side)

Plaintiff argues for a construction of its plain and ordinary meaning ("the part of an area that lies at the boundary, which part precedes all others in order"). Defendants argue for a construction of "a rigid, solid-material part of the buckle at the extremity opposite the second end and interconnecting the first and second lateral sides and the intermediate bar." Defendants argue that this term has to describe the area between the intermediate bar and the ends, since it has to have depth to be able to interconnect. Plaintiff responds that, once more, improper limitations are being read into the claim from the specification.

Again, the court must agree with plaintiff. Defendants' arguments attempt to read limitations like "rigid" and "solid-material" into the claims, when the only basis for doing so is the specification. Reading limitations into the claims from the specification remains improper, given that the claims themselves say nothing about the first ends being rigid or solid. SanDisk Corp., 415 F.3d at 1286; Unwired Planet, LLC, 829 F.3d at 1359. As such, the court finds that the appropriate construction is the term's plain and ordinary meaning, in this case "the part of an area that lies at the boundary, which part precedes all others in order," as such construction is also consistent with the language of the claims and the specification. Prima Tek II, 318 F.3d at 1148 (citation omitted).

### 13. Second end (lateral side)

Plaintiff argues for a construction of its plain and ordinary meaning ("the part of an area that lies at the boundary, which part is next in order to the first"). Defendants argue for a construction of "a rigid, solid-material part of the buckle at the extremity opposite the first end and interconnecting

the first and second lateral sides and the intermediate bar." For the reasons outlined above in analyzing "first end," the court finds that plain and ordinary meaning of "the part of an area that lies at the boundary, which part is next in order to the first" will suffice.

### 14. Interconnecting

Plaintiff argues for a construction of its plain and ordinary meaning ("joined or linked with one another"). Defendants argue for a construction of "having internal connections." Again, plain and ordinary meaning will suffice, as nothing in the language of the claims suggests another meaning was intended for a simple term like this. Prima Tek II, 318 F.3d at 1148 (citation omitted). As a result, the court finds that the appropriate construction for this term is "joined or linked with one another" as such construction is consistent with the term's plain and ordinary meaning as well as the intrinsic evidence, where the term was used to describe first and second ends being joined together with lateral sides. The '253 Patent, Doc. 78-2 at pg. 19. Such construction is also different than the court's construction for "connected to," which is important since different terms may be inferred or even presumed to have different meanings. See Innova, 381 F.3d at 1119.

### 15. First elevation transition areas

Plaintiff argues for a construction of its plain and ordinary meaning ("a part where there is a change in height relative to another point, which part proceeds all others in order"). Defendants argue that this term is incapable of construction, since when these claim terms are read in light of the specification and the prosecution history, they fail to inform with reasonable certainty those skilled in the art about the scope of the invention. Specifically, defendants argue that this was a limitation added to overcome prior art; as the limitation failed to provide its own written description, a definition is lacking and impossible to find. Additionally, defendants argue that this change

encompasses other elements which were specifically disclaimed, and thus causes the patent to fail. Plaintiff responds that defendants' argument is overly complicated, and that people know what "first" and "elevation" and "transition" and "areas" mean; as a result, construction is simple as "a part where there is a change in height relative to another point, which precedes all others in order."

In principle, the court agrees with plaintiff that the term "elevation transition areas" can be understood with its plain and ordinary meaning, and that it is similar to plaintiff's construction. However, the court will consider defendants' contention that the disclaimer in the prosecution history cannot be ignored. Again, one of the main uses for the prosecution history in claim construction is determining whether any particular interpretation was disclaimed by the inventor. Chimie, 402 F.3d at 1384. Any disclaimers must be "express representations made in obtaining the patent regarding the scope and meaning of the claims." DeMarini Sports, Inc., 239 F.3d at 1323; see also PODS, Inc., 484 F.3d at 1368 (the court looks at "whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter"); Poly-America, L.P. v. API Indus., Inc., 839 F.3d 1131, 1136 (disavowal "must be clear and unequivocal" but "need not be explicit").

Here, claim 9 was previously rejected by the Patent Office due to the obviousness of the claim in light of prior art. Complete File History of the '253 Patent, #79-5 at FH001117. In response, the inventor amended the patent to overcome the rejection, amending claim 9 to include "with first elevation transition areas between the top surface of the intermediate bar and the first end, and with second elevation transition areas between the top surface of the intermediate bar and the second end." Id. at FH001134. No other changes were made for claim 9, and in attempting to overcome the prior art rejection, the inventor made the express and unambiguous statement that "none of the

buckles associated with the cited references disclose the elevation transition areas as claimed." Id. at FH001142. In response to this amendment, claim 9 was approved, as the examiner agreed with the inventor and found that none of the referenced previous inventions "disclose the teeth features as claimed or the elevation transition areas as claimed" with their buckles. Id. at FH001158.

Defendants point to prior art from the '067 Patent. Specifically, defendants note that the buckle shown in Figure 9 of the '067 Patent contains elevation transition areas consistent with plaintiff's proposed construction. See Defendants' Responsive Claim Construction Brief, #79, Exhibit C at pg. 8. Defendants argue that, since the inventor made the express and unambiguous statement that "none of the buckles associated with the cited references disclose the elevation transition areas as claimed," the term "elevation transition areas" must mean something else entirely. But since that means the term's plain and ordinary meaning is invalid and there is no other guidance on the term's definition, defendants argue that the term must fail as indefinite.

The court disagrees. Review of the buckle in the '067 Patent highlighted by defendants depicts one markedly different from those described in the '253 Patent, in that it does not possess a raised intermediate bar. While it is true that the buckle in the '067 Patent does indeed change in height overall and thereby has "a part where there is a change in height relative to another point," that descriptor could fit virtually any element of the entire invention and likely every possible buckle in existence. However, the buckle defendant points to the '067 Patent does not have elevation transition areas as disclosed in the '253 Patent. As the elevation transition areas in the '253 Patent are described as transitioning from either end of the buckle to "the top surface of the intermediate bar," this is a key distinction, particularly since the inventor's argument was that previous buckles did not have elevation transition areas *as disclosed*." Complete File History of the '253 Patent, #79-

5 at FH001142. Accordingly, the court does not believe plaintiff's claim has been limited or is too indefinite on the basis of the prosecution history. And as there is no other indication in the record that plain and ordinary meaning should not apply, the court finds the appropriate construction is plain and ordinary meaning of "a place where there is a change in height relative to another point, which precedes all others in order."

*16. Second elevation transition areas*

Plaintiff argues for a construction of its plain and ordinary meaning ("a part where there is a change in height relative to another point, which part is next in order to the first"). Defendants argue that this term is incapable of construction, since when these claim terms are read in light of the specification and the prosecution history, they fail to inform with reasonable certainty those skilled in the art about the scope of the invention. For the reasons outlined above in analyzing "first elevation transition areas," the court finds that the appropriate construction of this term is "a place where there is a change in height relative to another point, which is next in order to the first."

*17. First end of the outer sleeve*

Plaintiff argues for a construction of its plain and ordinary meaning ("the part designed to fit over an arm that lies at the boundary, which part precedes all others in order"). Defendants argue for a construction of "the tip or extremity of the outer sleeve or first elongated member, opposite the second end, and sized and shaped to be fed through the buckle."

As "outer sleeve" has already been constructed, defining the first end of said outer sleeve is very straightforward. The plain and ordinary meaning is aptly expressed by plaintiff, with a slight modification to match the court's construction of "outer sleeve." As plain and ordinary meaning is consistent with the intrinsic evidence of the patent, Prima Tek II, 318 F.3d at 1148 (citation omitted),

the court finds that the proper construction of this term is "the part designed to fit over a body part that lies at the boundary, which part precedes all others in order."

*18. Second end of the outer sleeve*

Plaintiff argues for a construction of its plain and ordinary meaning ("the part designed to fit over an arm that lies at the boundary, which part is next in order to the first"). Defendants argue for a construction of "the tip or extremity of the outer sleeve or first elongated member, opposite the first end, and connected to the buckle." As outlined above, the court finds that plaintiff's construction is appropriate and consistent with both plain meaning and the language of the claims and patent as a whole once modified to match the court's construction of "outer sleeve"; as such, the proper construction is "the part designed to fit over a body part that lies at the boundary, which part is next in order to the first."

*19. Inner strap*

Plaintiff argues for a construction of its plain and ordinary meaning ("a flat strip situated farther in"). Defendants argue for a construction of "elongated material predominantly within the outer sleeve/first elongated member and exposed at least partially at the upper surface of the outer sleeve/first elongated member before the restraining mechanism."

Once again, the court finds that plain and ordinary meaning suffices for such a straightforward term. The claims themselves do not specifically define the term beyond its purpose as a tool for compressive force attached to the outer sleeve. As such, defendants' construction appears to import limitations from the specification that is unsupported by claim language. SanDisk Corp., 415 F.3d at 1286; Unwired Planet, LLC, 829 F.3d at 1359. Therefore, the court finds an appropriate construction for "inner strap" is "a flat strip situated farther in," as such definition

represents the term's plain and ordinary meaning and is consistent with the language of the claims and the specification.

### 20. Through

Plaintiff argues for a construction of its plain and ordinary meaning ("indicating into at one side or point and out at another"). Defendants argue for a construction of "movement from the bottom to the top or the top to the bottom of the buckle." Again, as noted in earlier terms, there is no need to use anything other than plain and ordinary meaning, as the patent does not reflect a specific definition offered by plaintiff or clear disclaimers of potential definitions. Prima Tek II, 318 F.3d at 1148 (citation omitted). Narrowing the term "through" to specifically include going in or out of the buckle is unnecessary, and the court will instead find a proper construction based on plain and ordinary meaning is "going in one side and out the other."

### 21. Slidable engagement

Plaintiff argues for a construction of its plain and ordinary meaning ("capable of sliding when coming together"). Defendants argue for a construction of "the inner strap/second elongated member is fastened inside and at the tip (or proximate thereto) of the outer strap/first elongated member, but is not fastened at the center or middle of the outer strap/first elongated member allowing the inner strap/second elongated member to smoothly move within the pocket of inner space of the outer strap/first elongated member."

Once again, the court finds no reason to use a construction beyond the term's plain and ordinary meaning. Plaintiff did not become their own lexicographer and clearly state a separate, explicit definition; nor is a term like "slidable engagement" so devoid of clarity that the scope of the claim cannot be ascertained. Prima Tek II, 318 F.3d at 1148 (citation omitted). Defendants' proposed

construction is unnecessarily narrow and includes limitations beyond what plain and ordinary meaning entails, which are apparently based on the specification. Such limitations, along with others suggested by defendants' construction, is improper in claim construction. Id.; SanDisk Corp., 415 F.3d at 1286; Unwired Planet, LLC, 829 F.3d at 1359. As such, the court will apply the term's plain and ordinary meaning and find for a construction of "capable of sliding when coming together."

### 22. First elongated member

Plaintiff argues for a construction of its plain and ordinary meaning ("the part of the whole that has more length than width, which part precedes all others in order"). Defendants argue for a construction of "an external tubular cover having more length than width with a pocket of interior space and at least one open end or opening large enough that an inner strap may be."

Once more, the court finds that plain and ordinary meaning will suffice. Defendants' proposed construction introduces a variety of limitations, such as "tubular" and "at least one open end or opening" that are not present in the claims themselves, but rather appear to be read into the claim from the specification. Reading these limitations in from the specification is improper, as plaintiff has not explicitly defined "first elongated member" or disclaimed specific meanings. Prima Tek II, 318 F.3d at 1148 (citation omitted); SanDisk Corp., 415 F.3d at 1286; Unwired Planet, LLC, 829 F.3d at 1359. As such, the court finds this term's plain and ordinary meaning is "the part of the whole that has more length than width, which precedes all others in order."

### 23. Looped around the body part

Plaintiff argues for a construction of its plain and ordinary meaning ("forming a closed circle around the body part"). Defendants argue for a construction of "surround or encircle the body part and fastening to form a loop." Once again, the court finds that the term's plain and ordinary meaning

will suffice, as "looped around the body part" is a straightforward term that does not defy explication. Prima Tek II, 318 F.3d at 1148 (citation omitted). Here, the court finds that such plain and ordinary meaning is "forming a closed loop around the body part," as this construction is consistent with the claims, which describe looping the first elongated member entirely around the body part in question in order to apply compressive force. The '253 Patent, Doc. 78-2, pg. 19.

*24. Elevation transition areas*

Plaintiff argues for a construction of its plain and ordinary meaning ("parts where there is a change in height relative to another point"). Defendants argue that this term is incapable of construction, since when these claim terms are read in light of the specification and the prosecution history, they fail to inform with reasonable certainty those skilled in the art about the scope of the invention. As outlined above, the court finds an appropriate construction for this term is "a place where there is a change in height relative to another point."

**VI.      Conclusion**

Based on the foregoing, the court provides the following claim constructions:

**'067 Patent**

| Disputed Term | Court's Construction |
|---|---|
| Means for circumferentially surrounding | Function: to completely encircle a body part<br>Structure: first elongated member, outer sleeve, strap, or equivalents thereof |
| Means for compressing | Function: to apply compressive force to a body part<br>Structure: an inner strap, second elongated member, or equivalents thereof |
| Means for tensioning | Function: to apply tensile force to tighten<br>Structure: a windlass, ratchet, or equivalents thereof |
| Means for looping | Function: to form a circular loop of the means for circumferentially surrounding |

| | Structure: a buckle, ring, or equivalents thereof |
|---|---|
| Means for fastening | Function: to join the overlapping portions of the means for circumferentially surrounding<br>Structure: hook and loop structures or equivalents thereof |
| Means for securing | Function: to secure in position<br>Structure: a securing strap, hooked catch, hooked catches, or equivalents thereof |
| Slidably engaging | capable of sliding when coming together |
| Upon passing the means for circumferentially surrounding through the means for looping, a portions of the means for compressing also passes through the means for looping | as the first elongated member, outer sleeve, strap, or equivalents thereof goes through a buckle, ring, or equivalents thereof, part of the second elongated member, inner tightening member, inner strap, or equivalents thereof also goes through the buckle, ring, or equivalents thereof immediately or very soon thereafter |
| A gap is located between portions of the means for compressing at the means for looping when the means for circumferentially surrounding is applied to the body part | an opening is located at the buckle, ring, or equivalents thereof between portions of the inner strap, second elongated member, and equivalents thereof when the first elongated member, outer sleeve, strap, or equivalents thereof is applied to the body part |
| Connected to | United, joined, or linked together |

**'253 Patent**

| Disputed Term | Court's Construction |
|---|---|
| Outer sleeve | a part that fits over a body part |
| First end | the part of an area that lies at the boundary, which part precedes all others in order |
| Second end | the part of an area that lies at the boundary, which part is next in order to the first |
| Connected to | United, joined, or linked together |
| First lateral side | a bounding surface of an object on the side, as opposed to an end, that precedes all others in order |

| | |
|---|---|
| Second lateral side | a bounding surface of an object on the side, as opposed to an end, which surface is next in order to the first |
| Intermediate bar | a middle straight piece that is longer than it is wide |
| First sidewall | a wall forming the side of an object that precedes all others in order |
| Second sidewall | a wall forming the side of an object, which side is next in order to the first |
| Top surface | the highest part of an exterior boundary of an object |
| Bottom surface | the underside of an exterior boundary of an object |
| First end | the part of an area that lies at the boundary, which part precedes all others in order |
| Second end | the part of an area that lies at the boundary, which part is next in order to the first |
| Interconnecting | Joined or linked with one another |
| First elevation transition areas | a place where there is a change in height relative to another point, which precedes all others in order |
| Second elevation transition areas | a place where there is a change in height relative to another point, which is next in order to the first |
| First end of the outer sleeve | the part designed to fit over a body part that lies at the boundary, which part precedes all others in order |
| Second end of the outer sleeve | the part designed to fit over a body part that lies at the boundary, which part is next in order to the first |
| Inner strap | a flat strip situated farther in |
| Through | going in one side and out the other |
| Slidable engagement | capable of sliding when coming together |
| First elongated member | the part of the whole that has more length than width, which part precedes all others in order |
| Looped around the body part | forming a closed loop around the body part |
| Elevation transition areas | a place where there is a change in height relative to another point |

**IT IS SO ORDERED.**

**IT IS FURTHER ORDERED** that this case be referred to Magistrate Judge Cayer for the entry of an appropriate Utility Patent Pretrial Order and Case Management Plan.

Signed: April 12, 2018

Max O. Cogburn Jr.
United States District Judge