UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cv-72

| | | |
|---|---|---|
| **COMPOSITE RESOURCES, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **COMBAT MEDICAL SYSTEMS, LLC and ALPHAPOINTE,** | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the court on defendants' Joint Motion for Summary Judgment of Invalidity of Claims 15-16 of U.S. Patent No. 7,842,067 and Claim 9 of U.S. Patent No. 7,892,253. Having considered the defendants' motion and reviewed the pleadings, the court enters the following Order.

I. **Background**

Both U.S. Patent No. 7,842,067 ("the '067 Patent") and U.S. Patent No. 7,892,253 ("the '253 Patent") pertain to a tourniquet. The '067 Patent's invention is a tourniquet consisting of a pair of straps and a buckle that can be manipulated and tightened by a user (including a potential victim) with only one hand. The tourniquet also provides improved circulation stoppage through an inner tightening strap within a sleeve. The '253 Patent's invention is the same, except that it allows for modifications to the buckle, such as teeth and planar and elevation transition areas, that make it harder for the tourniquet to inadvertently loosen.

a. *The '067 Patent*

On November 30, 2010, the United States Patent and Trademark Office (the "PTO") issued

the '067 Patent, titled "Tourniquet and Method of Use," which names Mr. Mark Esposito as inventor. The patent describes a relatively small and lightweight tourniquet, comprised of a first elongated member including a buckle, and a second elongated member slidably connected to the first. In addition, a tensioning mechanism connected to the second member applies tension to create compressive force that restricts the flow of blood in the body part. The tensioning mechanism may be a windlass or a ratchet. The tourniquet is suited for emergency use, and may be applied, manipulated, and tightened by the wearer, even if the wearer is limited to one hand.

> b. *The '253 Patent*

On February 22, 2011, the PTO issued the '253 Patent, also titled "Tourniquet and Method of Use," which also names Mr. Esposito as inventor, along with Mr. Jonathan Bennett. This patent is for another tourniquet that is nearly identical to the one described in the '067 Patent. However, this tourniquet modifies the buckle to include one or more of a raised intermediate bar and one or more teeth attached to the bar, in order to better prevent the outer sleeve from inadvertently loosening and disengaging from the buckle.

> c. *The infringing product*

CRI alleges that defendants infringed these two patents by making, using, importing, offering for sale, and selling its "Tactical Mechanical Tourniquet" ("the TMT Product"). Specifically, plaintiff alleges that defendant Combat Medical Systems, LLC, the primary distributor of defendant Alphapointe, offers for sale and sells the TMT Product in this district and throughout the United States. CRI alleges that the TMT Product is a tourniquet that restricts the flow of blood in a body part, via looping around and circumferentially surrounding the body part and compressing it through a slidably engaged mechanism. In doing so, CRI argues that the TMT

Product violates at least claim 15 of the '067 Patent and at least claim 9 of the '253 Patent. CRI further argues that such sales of the TMT Product by defendants has ongoing costs to CRI in loss of sales, loss of profits, loss of royalties, and other irreparable injuries. Defendants argue that they have not infringed on any valid patent claims, and in the instant motion seek a declaration of summary judgment on the invalidity of claims 15 and 16 of the '067 Patent and claim 9 of the '253 Patent.

## II.     Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it may affect the suit's outcome under governing law. Id. The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). The burden then shifts to the nonmoving party. That party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in pleadings to defeat a motion for summary judgment. Id. at 324. Instead, that party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

The Court views evidence and any inferences from evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). The question posed by summary judgment is whether the evidence "is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 252.

A patent may be held to be invalid due to lack of a written description. 35 U.S.C. § 112, 112, ¶ 1 provides that "[t]he specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention." Invalidity due to failure to comply with the written description requirement of 35 U.S.C. § 112, ¶ 1 is a question of fact, and the court notes that patents are "presumed to be valid and overcoming this presumption requires clear and convincing evidence." Centocor Ortho Biotech, Inc. v. Abbott Labs., 636 F.3d 1341, 1347 (Fed. Cir. 2011); Enzo Biochem, Inc. v. Gen-Probe Inc., 323 F.3d 956, 962 (Fed. Cir. 2002).

To satisfy the written description requirement, the inventor "must 'convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention,' and demonstrate that by disclosure in the specification of the patent." Carnegie Mellon Univ. v. Hoffmann-La Roche Inc., 541 F.3d 1115, 1122 (Fed. Cir. 2008) (quoting Vas-Cath Inc. v. Mahurkar, 935 F.2d 1555, 1563-64 (Fed. Cir. 1991)). To assess whether the inventor achieved such possession, the court carries out "an objective inquiry into the four corners of the

specification" and decides whether the specification describes "an invention understandable to [a person of ordinary skill in the art]" and shows "that the inventor actually invented the invention claimed." Ariad Pharm., Inc. v. Eli Lilly & Co., 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc)). The test focuses on whether the patent specification actually discloses "such descriptive means as words, structures, figures, diagrams, formulas, etc." and not on what would have been obvious to a person skilled in the art from the disclosure. Lockwood v. American Airlines, Inc., 107 F.3d 1565, 1572 (Fed. Cir. 1997). Finally, the patent specification need not describe the invention in the exact words of the claims, but a "mere wish or plan" for obtaining the claimed invention will fail. Regents of the Univ. of Cal. v. Eli Lilly & Co., 119 F.3d 1559, 1566 (Fed. Cir. 1997); see also In re Gostelli, 872 F.2d 1008, 1012 (Fed. Cir. 1989).

**III.     Discussion**

The court has reviewed defendants' Joint Motion for Summary Judgment (#84) and Memorandum in Support (#84-1), plaintiff's Response (#85), defendants' Reply (#88), and plaintiff's Surreply (#89). The court will discuss its findings concerning the validity of each patent's respective claims below.

  a. *Claims 15-16 of the '067 Patent*

First, defendants argue that claims 15 and 16 of the '067 Patent are invalid. Specifically, defendants argue that the '067 Patent's specification does not contain a written description of the limitation of "wherein a gap is located between portions of the means for compressing at the means for looping when the means for circumferentially surrounding is applied to the body part." Defendants contend that the word "gap" does not appear in the originally filed patent application, that there is no written description of a gap as described in the claim, that it was not in the original

claims or specification, and that it was added to the claims after the original claims in the application were rejected as obvious. See #84-4, pg. 1-41, 46-57, 64. As a result, defendants argue that claims 15 and 16 are invalid for failing to have a description of this limitation and that any obviousness arguments are unavailing. Lockwood, 107 F.3d at 1572. In response, plaintiff argues that defendants have failed to provide clear and convincing evidence and that the specification adequately discloses the claims at issue.

After reviewing the record, the court agrees with plaintiff. The court has already constructed the terms in the claims at issue after proceeding through means-plus-function analysis pursuant to 35 U.S.C. § 112, ¶ 6. This includes constructing the means for compressing, means for looping, and means for circumferentially surrounding. Plain and ordinary meaning is sufficient for the remaining terms, including "portions" and "gap." In particular, defendants' arguments focus on a lack of written support for the word "gap." But review of the specification shows that Figure 5 of the '067 Patent clearly depicts a gap (or, as constructed in the court's previous order, an opening) between portions of the means for compressing where the means for looping is, just as described in the language of the claims. While the court agrees with defendants that this figure appears to be the only clear and unambiguous reference to the gap in question (since subsequent figures appear to show the invention at other stages of use where it has been tightened and the gap eliminated), defendants fail to highlight any legal authority showing why more than one reference is required. Nor has defendant shown any reason to go against the Federal Circuit's instruction that "drawings alone may provide a 'written description' of an invention as required by § 112." Vas-Cath, 935 F.2d at 1565. As such, the court finds that defendants have not met their burden of

showing a lack of a written description by clear and convincing evidence, and will deny defendants' motion for summary judgment for invalidity of claims 15 and 16 of the '067 Patent.

  *b. Claim 9 of the '253 Patent*

Next, defendants argue that claim 9 of the '253 Patent is invalid. Specifically, defendants argue that the '253 Patent's specification does not contain a written description of the limitations in claim 9 of "first elevation transition areas between the top surface of the intermediate bar and the first end" or "second elevation transition areas between the top surface of the intermediate bar and the second end." Defendants make similar arguments to those above involving the '067 Patent, in that defendants argue that elevation transition areas lack any writing in support. Additionally, defendants argue that the figures that depicting elevation transition areas actually show planar transition areas, another term used earlier in the patent, and that the figures are specifically annotated as demonstrating first and second planar transition areas. See The '253 Patent, Fig. 20. As there is an inference that different terms have different meanings, Comaper Corp. v. Antec, Inc., 596 F.3d 1343, 1348 (Fed. Cir. 2010), defendants argue that the figures cannot be used as support for elevation transition areas since planar transition areas are described instead. With no other discernible written support, defendants argue that there is no issue of material fact that elevation transition areas lack written description support.

After review of the patent in its entirety, the court disagrees. First and foremost, there does appear to be writing in support of elevation transition areas, as the inventor explicitly wrote in the specification that "one can see that the top surface 102 of the intermediate bar 98 is elevated relative to the first end 118 and second end 122 of the buckle 38," and refers to relevant figures. The '253 Patent, Col. 11, lines 3-5. Review of said figures shows a change in elevation from the

top of the intermediate bar down to each end of the buckle, just as described in the language of the claims. The planar transition areas appear to be a different part of the buckle than elevation transition areas, as the planar transition area annotations appear to show changes in the buckle between the sides of the intermediate bar and the buckle, not where the elevation changes between the top of the intermediate bar and the ends of the buckle. The '253 Patent, Fig. 20. The court also notes that, while there is an inference that different terms have different meanings, such an inference "is not conclusive" and "it is not unknown for different words to be used to express similar concepts, even though it may be poor drafting practice." Bancorp Servs., L.L.C. v. Hartford Life Ins. Co., 359 F.3d 1367, 1373 (Fed. Cir. 2004). Even if the court fully accepted and agreed with defendants' argument that planar transition areas and elevation transition areas describe identical areas, an inconclusive inference can hardly be said to qualify as clear and convincing evidence appropriate for summary judgment on this issue. In any case, the court will also deny defendants' motion for summary judgment for invalidity of claim 9 of the '253 Patent.

**ORDER**

**IT IS, THEREFORE, ORDERED** that defendants' Joint Motion for Summary Judgment of Invalidity of Claims 15-16 of U.S. Patent No. 7,842,067 and Claim 9 of U.S. Patent No. 7,892,25 (#84) is **DENIED**.

Signed: April 12, 2018

Max O. Cogburn Jr
United States District Judge