UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-72-MOC-DSC

| | | |
|---|---|---|
| **COMPOSITE RESOURCES, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | **ORDER (REDACTED VERSION)** |
| | ) | |
| **COMBAT MEDICAL SYSTEMS, LLC and** | ) | |
| **ALPHAPOINTE,** | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on the following motions: Motion in Limine to Exclude or Limit the Testimony of Non-Retained Experts, filed by Composite Resources, Inc., (Doc. No. 162); Motion for Summary Judgment of Infringement, filed by Composite Resources, Inc., (Doc. No. 164); Motion in Limine to Exclude the Testimony of Dr. Collins, filed by Composite Resources, Inc., (Doc. No. 166); Motion for Summary Judgment on Non-Infringement and Invalidity as to the '067 Patent, filed by Alphapointe and Combat Medical Systems, LLC, (Doc. No. 168); Motion for Partial Summary Judgment Limiting the Actual Damages Plaintiff May Seek at Trial, filed by Alphapointe and Combat Medical Systems, LLC, (Doc. No. 171); Motion for Summary Judgment on Non-Infringement and Invalidity as to the '253 Patent, filed by Alphapointe and Combat Medical Systems, LLC, (Doc. No. 174); Motion in Limine to Exclude Opinions of James Davenport, filed by Alphapointe and Combat Medical Systems, LLC, (Doc. No. 177); Motion in Limine to Exclude the Proferred Expert Testimony of Matt Cupelli, filed by Alphapointe and Combat Medical Systems, LLC, (Doc. No. 180); Motion in Limine to Exclude Certain Opinions of Graham Rogers, filed by Alphapointe and Combat Medical Systems, LLC

1

(Doc. No. 183); and Motion to Strike 223 Patent Invalidity/Infringement Contentions, filed by Composite Resources, Inc., (Doc. No. 224).

## I.      BACKGROUND AND FINDINGS OF FACT

This is a patent infringement case in which Plaintiff Composite Resources, Inc. asserts that the Tactical Mechanical Tourniquet ("TMT") manufactured by Alphapointe and distributed by Combat Medical Systems, LLC (collectively, "Defendants") infringes Claims 15 and 16 of Plaintiff's U.S. Patent No. 7,842,067 (the "'067 Patent"). In turn, Defendants argue that the TMT does not infringe the '067 Patent and, further, that Claims 15 and 16 are invalid based on indefiniteness. For the following reasons, the Court finds that the TMT does not infringe the '067 Patent.[1] The Court further finds, however, that Claims 15 and 16 of the '067 Patent are not invalid.

The Court makes the following Findings of Fact:

1. Tourniquets can help prevent death caused by blood loss from an extremity.

2. The CAT was conceived in 2003. Mark Esposito sought to patent the technology embodied in the CAT and represented himself to be the sole inventor to the United States Patent and Trademark Office ("USPTO"). He filed a patent application on June 6, 2005, which eventually became the '067 Patent. See (**Ex. 1**). Mr. Esposito later sold the '067 Patent to Plaintiff. See (**Ex. 2**, 326:12–16, 327:3-6, 327:15–328:6).

3. As originally submitted, Claim 11 (which issued as Claim 15) provided:

A tourniquet for restricting a flow of blood in a body part, the tourniquet comprising:

(a) means for circumferentially surrounding the body part;

---

[1] As the Court discusses, infra, Plaintiff also alleged that the TMT infringed Plaintiff's '253 Patent, but the parties have since stipulated to the dismissal of that infringement claim.

(b) means for compressing the body part, the means for compressing slidably engaging the means for circumferentially surrounding;

(c) means for tensioning the means for compressing; wherein applying a tensile force to the means for compressing using the means for tensioning applies a compressive force to the body part to restrict the flow of blood in the body part.

4. As a result of multiple rejections, Claim 11 (issued as Claim 15) was amended multiple times to overcome prior art. Claim 15 in the '067 Patent provides:

A tourniquet for restricting a flow of blood in a body part, the tourniquet comprising:

(a) means for circumferentially surrounding the body part;

(b) means for compressing the body part, the means for compressing slidably engaging the means for circumferentially surrounding;

(c) means for tensioning the means for compressing, the means for tensioning comprising a rotatable member;

(d) means for looping a portion of the means for circumferentially surrounding around the body part, wherein the means for looping is connected to the means for circumferentially surrounding and the means for compressing, and wherein upon passing the means for circumferentially surrounding through the means for looping, a portion of the means for compressing also passes through the means for looping, wherein a gap is located between portions of the means for compressing at the means for looping when the means for circumferentially surrounding is applied to the body part; wherein the means for circumferentially surrounding comprises a means for fastening extending along a length of the means for circumferentially surrounding, the means for fastening engaging a portion of a first surface of the means for circumferentially surrounding to a second

3

portion of the first surface of the means for circumferentially surrounding; wherein applying a tensile force to the means for compressing using the means for tensioning applies a radial compressive force to the body part to restrict the flow of blood in the body part.

**(Ex. 1).**

5. During prosecution of the '067 Patent, Claim 11 (Claim 15 as issued) was rejected as anticipated by <u>Jennifer, et al.</u> (US Patent Application Number 10/830,144, published as Pub. No. 2005/0240217, and issued as U.S. Pat. No. 7,776,064).[2]  <u>See</u> **(Ex. 3).**  The applicant distinguished <u>Jennifer</u>, arguing that the only element that could serve to circumferentially surround a body part was a strap, identified by the letter "H," and that "the means for compressing the body part of <u>Jennifer</u> is also strap H."  <u>See</u> **(Ex. 4).** The figures below from <u>Jennifer</u> show the "H" (defined in <u>Jennifer</u> as the "Strap") referred to in the office action response:



_____

[2]  The commercial embodiment of the Jennifer Patent is a tourniquet known as the SOF-T.

4

**(Ex. 5).**

6. To provide additional context for these figures, the means for circumferentially surrounding is H. See id., 4:13–17 ("Once strap H is positioned to hold handle G, it is routed through the area above base 12 [referring to Fig. 1] and below cap F so that the other end remains free to use by the user to be placed into the quick release buckle D in order to tighten the tourniquet article."). Strap H is also an integrated part of the means for compressing. Id. at 3:32–33 ("The tightening system consists of handle G, strap H, and buckle D.").

7. During prosecution of the '067 Patent, the applicant argued that "the means for compressing the body part of Jennifer is also strap H." **(Ex. 4).** In other words, the applicant distinguished Claim 11 (Claim 15 as issued) as requiring a means for compressing separate from the means for circumferentially surrounding, whereas Jennifer had only one structure that provided both the means for compressing and the means for circumferentially surrounding a body part. (Id.). Specifically, the applicant argued, "… Jennifer fails to disclose a means for circumferentially surrounding a body part and a means for compressing the body part.") (emphasis in original).

8. On December 10, 2009, the examiner again rejected Claim 11 (Claim 15 as issued), this time as anticipated by Brothers (US Patent Number 2,387,428). **(Ex. 6).**

9. As the illustration below indicates, Brothers involved a tourniquet with both a base strap and an inner band. The inner band is twisted using a handle to create circumferential compression.

5



See (**Ex. 7**).

10. The applicant responded to the examiner's rejection on March 10, 2010 by amending Claim 11 to require that both circumferential bands must be "connected to" and "pass through" the "means for looping", i.e., a buckle. To accomplish this, the applicant added the limitation of "means for looping a portion of the means for circumferentially surrounding around the body party, wherein the means for looping is connected to the means for circumferentially surrounding and the means for compressing, and wherein upon passing the means for circumferentially surrounding through the means for looping, a portion of the means for compressing also passes through means for looping." (**Ex. 8**). This additional limitation was added to overcome prior art – Brothers.

11. On June 8, 2010, the examiner again rejected amended Claim 11 (Claim 15 as issued) as obvious in light of Brothers in combination with Gouirand (US Patent Number 1,698,813). (**Ex. 9**).

12. Gouirand adds the concept of using a buckle to secure the tightening strap of a tourniquet. See (**Ex. 10**).

13. To differentiate the combination of <u>Brothers</u> and <u>Gouirand</u>, the applicant then informally proposed changes to the claims via a fax dated September 3, 2010. Specifically, the applicant suggested amending Claim 11 (Claim 15 as issued) to add "wherein a gap is located between portions of the means for compressing at the means for looping when the means for circumferentially surrounding is applied to the body part." **(Ex. 11).** This additional limitation also was added to overcome prior art—the combination of <u>Brothers</u> and <u>Gouirand</u>.

14. The examiner had a telephonic interview with the applicant's representative on September 8, 2010, during which "Agreement was reached that the proposed amendments to Claims 1, 11, 15, and 22…would overcome the prior art." **(Ex. 12).** The addition to Claim 11 (Claim 15 as issued) was made by an examiner's amendment. (<u>See id.</u>).

15. The applicant made a final amendment to Claim 11 (Claim 15 as issued) when it amended the claim to clarify that the "gap is located between portions of the means for compressing at [[and]] the means for looping." **(Ex. 13).**

16. Claim 16 of the '067 Patent states, "The tourniquet as claimed in Claim 15, further comprising means for securing the means for tensioning." (<u>See id.</u>).

17. On April 12, 2018, the Court entered its Claim Construction Order, defining the following terms:

a. "Means for circumferentially surrounding" is "a first elongated member, outer sleeve, strap, or equivalents thereof." (Doc. No. 98, p. 36).

b. "Means for looping" is "a buckle, ring, or equivalents thereof." (<u>Id.</u>, pp. 36–37).

c. "Means for compressing" is "an inner strap, a second elongated member, or equivalents thereof." (<u>Id.</u>, p. 36).

18. The specification set forth in the '067 Patent describes various embodiments relevant to Claim 15(d). Those include:[3]

a. "In addition, the tourniquet provides improved circulation stoppage by way of an inner tightening strap positioned within a sleeve." (**Ex. 1**, 4:60–62).

b. "In accordance with at least one embodiment of the present invention, the inner strap 18 comprises a length of nylon binding strap (also known as nylon binding tape) that extends from first end 30 of the outer sleeve 14 to the buckle 38 and returns to the first end 30 such that the inner strap 18 comprises a loop." (Id. at 6:7–12).

c. "The ends of the inner strap 18 are preferably anchored only at the tip 58 of the first end 30 of outer sleeve 14, as for example, by sewing, gluing, stapling, clamping, or heat/ultra sound (sonic) welding, or combinations thereof. Thus, the inner strap 18 can slide within the interior space 44 of the outer sleeve 14." (Id. at 6:17–22).

d. "In accordance with embodiments of the present invention, the tourniquet may comprise an inner strap 18 that extends through and [sic] end slit (not shown) at the first end 30, such as a slit in the upper or first panel 42 of the outer sleeve 14. The inner strap 18 may then be anchored at or proximate to the distal end of the lower or second panel 46. Alternatively, the slit (not shown) may be in the second panel 46 and the inner strap 18 anchored at or proximate to the distal end of the first panel 42." (Id. at 6:33–41).

e. "In accordance with embodiments of the present invention, the tourniquet may be configured such that a single layer (i.e., not a loop) of material is used to form the inner strap 18. Here, a first end of the inner strap 18 is anchored at or near the tip 58 of the first end 30 of the outer sleeve 14, and a second end of the inner strap 18 is anchored at or near the buckle 38, with the middle portion not anchored to the outer sleeve 14." (Id. at 6:42–49).

f. "In accordance with embodiments of the present invention, the inner strap 18 passes through a slot or aperture 78 in the windlass 74, and as described above, the inner strap 18 extends to and around the buckle 38." (Id. at 7:10–14).

g. "Since the end of the inner strap 18 is secured to the tip 58 of the outer sleeve 14, when the windlass 74 is rotated, the inner strap 18 slides within the outer

---

[3] The portions cited are from the "Detailed Description of the Invention." Similar statements located in the "Summary of the Invention" are not quoted herein but are located in Defendants' Exhibit 1.

sleeve 14, essentially scrunching the outer sleeve 14 relative to the inner strap 18 as the inner strap 18 is increasingly tightened. The tightened inner strap 18 provides a substantially even radial compressive pressure to the limb to which the tourniquet 10 is being applied." (Id. at 7:24–31).

h. "Since the inner strap 18 is secured to the tip 58 of first end 30 of the outer sleeve 14, the inner strap 18 slides in the direction of arrows A3 and A4 within the outer sleeve 14 as the windlass 74 is rotated, thereby pulling the inner strap and providing a circumferentially applied compression force to the appendage." (Id. at 7:40–45).

i. "Accordingly, the tourniquet 10 of the present invention offers the advantage of an unlimited number of possible twists." (Id. at 7:54–55).

j. "Tourniquet 10' comprises an inner strap 90 that does not loop back and forth from the tip 58 of the outer sleeve 14 to the buckle 38 and back to the tip 58, but rather, only extends from the tip 58 to the securing mechanism 22. More particularly, the inner strap 90 is secured to, or proximate the tip 58, and extends from the tip 58 of the outer sleeve 14 to the tensioning mechanism 22, where the inner strap 90 ends at, or proximate to the tensioning mechanism 22." (Id. at 8:55–63).

k. "In accordance with embodiments of the present invention, the tourniquet 10' preferably includes a second portion of an inner strap 98 that extends from buckle 38 to the windlass 94. The inner strap 98 may extend as an endless loop between the buckle 38 and the windlass 94. Alternatively, the inner strap 98 may not extend back and forth between the buckle 38 and windlass 94, but may only partially overlap and be secured to itself." (Id. at 9:4–11).

l. "As with tourniquet 10, while a first end of the inner strap 90 is secured to the tip 58 of the outer sleeve 14, when the tightening mechanism 22 is used, as for example, when the windlass 94 is rotated, the inner strap 90, 98 slides within the outer sleeve 14, essentially scrunching the outer sleeve 14 relative to the inner strap 90, 98 as the inner strap 90, 98 is continued to be tightened." (Id. at 9:12–18).

m. "Referring now to FIG. 13, yet another modified embodiment of the present invention is shown as tourniquet 10". Tourniquet 10" comprises a [sic] inner strap 102 that extends from tip 58 to securing mechanism 22 and back to tip 58, where the inner strap 102 is connected to the tip 58, such as by sewing, glueing, stapling, clamping, or heat/ultra-sound (sonic) welding, or combinations thereof." (Id. at 9:30–36).

19. Plaintiff asserts that the CAT reads on the '067 Patent. See **(Ex. 14).**

20. The CAT includes four main structures—a buckle, an outer sleeve (made from a

9

nylon strap and a piece of hook and loop material), an inner strap located inside the outer sleeve, and a windlass. See (**Ex. 15**).

21. The inner strap of the CAT is threaded through the windlass and connected to the tip of the outer sleeve on one end and to the buckle on the other end. When the CAT is applied to an extremity, the outer sleeve (with the inner strap inside it and extending the full length of the outer sleeve) is threaded through the buckle and secured to itself using hook and loop material. Because the inner strap is inside the outer sleeve, when the outer sleeve is threaded through the buckle, both the outer sleeve and the inner strap pass through the buckle and circumferentially surround the extremity. See (**Ex. 16**, 163:8–17). The windlass is then turned, which shortens the inner strap and causes circumferential pressure to be applied to the extremity. (See id. at 69:6–18).[4] The windlass is then secured.

22. The website dedicated to the CAT describes it as having a "[p]atented band within band," which gives "truly even distribution of circumferential pressure." See http://www.combattourniquet.com/ (last accessed September 19, 2019).

23. Claim 15(d) of the '067 Patent describes "a gap" "located between portions of the means for compressing at the means for looping when the means for circumferentially surrounding is applied to the body part." (**Ex. 1**).

24. Plaintiff's corporate representative could not explain [**REDACTED**]. See (**Ex. 2**, 224:7–12, 225:5–12).

25. Plaintiff identified Figure 5 of the '067 Patent as illustrating the "gap" limitation:

---

[4] When manipulating the CAT, one can feel the inner strap tightening inside the outer sleeve. This also can be seen through puckering or gathering of the outer sleeve.



26. In its briefing, Plaintiff presented an annotated Figure 5, as shown below:



See (Doc. No. 96 at p. 3).

27. Through counsel, Plaintiff has made two arguments regarding the "gap" in the TMT. First, Plaintiff identified the "gap" as follows:



means for looping
(buckle)

portions of means for compressing

The "gap" is shown by the blue arrow, extending from one end of the "portions for means of compressing" (red arrow), around the infringing tourniquet, to the other end of the "portions for means of compressing" (red arrow).

(**Ex. 17**, Request No. 3).

28. Plaintiff alternatively identified the "gap" as being located between one side of the buckle and the other, using the theory that the Strap is "functionally" both the "means for circumferentially surrounding" and the "means for compressing." (**Ex. 18**, p. 14).

29. Cupelli, Plaintiff's only expert addressing the '067 Patent, testified that either of these interpretations are reasonable based on the language of the '067 Patent. See (**Ex. 19**, 111:24–112:15, 112:24–113:3).

30. While the CAT was an improvement on prior tourniquet technology, it was not perfect. The Army sought to design a better tourniquet and, as a result of a team effort by the Army and Alphapointe's predecessor, the TMT was conceived. See (**Ex. 20**, ¶ 3; **Ex. 21**).

31. This is a figure of the TMT:



(**Ex. 20**, ¶ 4; <u>see also</u> **Ex. 22**).

32. The TMT has four main structures – Strap, Tightening Band, Slider/Receiver, and a windlass.  (**Ex. 20**, ¶ 5).  The Tightening Band is roughly 5-6" long. It is threaded through the windlass and connected to the Strap, terminating on either side of a plastic plate that sits below the windlass.  <u>See</u> (**Ex. 2**, 204:13–17; 204:25–205:6; **Ex. 20**, ¶ 5).

33. Plaintiff has identified the TMT's Strap as the "means for circumferentially surrounding."  (**Ex. 14**, at p. 4).  Plaintiff has identified the TMT's Tightening Band as the "means for compressing."  <u>Id.</u>  Plaintiff has identified the combination of the TMT's Slider/Receiver as the "means for looping."  (<u>Id.</u> at pp. 4–5).

34. The Tightening Band does not connect to the Slider or the Receiver, nor can it. (**Ex. 20**, ¶ 6).  The Tightening Band never passes through the Slider/Receiver, nor can it.  <u>Id.</u>

35. [**REDACTED**].  See (**Ex. 2**,[5] 183:12–16, 220:23–25)  [**REDACTED**].  (**Ex. 16**, 176:20–12; **Ex. 19**,[6] 93:13–23, 94:9–21; **Ex. 20**, ¶ 7; Ex. 23,[7] 56:2–57:3, 57:13–20.

36. [**REDACTED**].  See (**Ex. 20**, ¶ 8; **Ex. 23**, 52:20–53:6, 53:22–54:5, 55:8–56:1).

37. When the TMT is applied to an extremity, only the Strap is passed through the Slider/Receiver and secured using hook and loop material.  The windlass is then turned, thus shortening the Tightening Band and causing the Strap to apply circumferential pressure to the extremity.  The windlass is then secured.  (**Ex. 20**, ¶ 9).

38. Plaintiff argues that the Tightening Band "functionally" or "indirectly" passes through the Slider/Receiver.  Plaintiff's corporate representative testified that [**REDACTED**].  See (**Ex. 2**, 186:13–16).  Plaintiff's expert, Cupelli, stated in his Rebuttal Report that because the Tightening Band is connected to the Strap, it "functionally" passes through the buckle and is "functionally" attached to the buckle.  (**Ex. 24**, p. 12).

39. In February 2017, Plaintiff filed suit against Defendants for patent infringement.  See (Doc. 5).  Plaintiff initially claimed that Defendants infringed two patents—the '067 Patent (Count I) and the '253 Patent (Count II).  See id., Counts I and II.  The parties have since stipulated to dismissal of Count II.  (Doc. No. 154).

40. On June 8, 2017, Plaintiff served its Initial Asserted Claim and Infringement Contentions.  See (**Ex. 25**).  On June 12, 2018, Plaintiff served its First Amended Claim and Infringement Contentions.  See (**Ex. 27**).  On April 29, 2019, after being granted leave to do so (see Doc. No. 150), Plaintiff served its Second Amended Claim and Infringement Contentions.  See (**Ex. 14**).  All of Plaintiff's Claim and Infringement Contentions assert that the TMT violates

---

[5] Bennett testified as one of two corporate representatives of Plaintiff.
[6] Cupelli has been designated by Plaintiff as an expert regarding the '067 Patent and the CAT.
[7] Thompson also testified as one of two corporate representatives of Plaintiff.

Claims 15 and 16 of the '067 Patent.  See (**Ex. 14**, p. 2; **Ex. 25**, p. 3; **Ex. 27**, p. 2).

41. On July 26, 2017, Defendants filed their First Motion for Summary Judgment of Non-Infringement.  See (Doc. Nos. 41–42).  Defendants argued, in part, that the TMT could not infringe the '067 Patent because it did not meet the limitations of Claim 15(d).  (See id.).  The Court denied Defendants' First Motion for Summary Judgment of Non-Infringement as premature.  (Doc. No. 57).

42. On July 19, 2017, Defendants filed their Motion for Sanctions under Rule 11. (Doc. No. 37).  Defendants argued, in part, that Plaintiff failed to conduct an adequate pre-suit investigation before filing this lawsuit.  (Id.).  The Court denied Defendants' Motion for Sanctions as premature.  (Doc. No. 57).

## II.  STANDARD OF REVIEW

Summary judgment should be granted where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); see Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1324 (Fed. Cir. 2001). "Summary judgment is as appropriate in a patent case as it is in any other case."  Desper Prods., Inc. v. QSound Labs, Inc., 157 F.3d 1325, 1332 (Fed. Cir. 1998).  In particular, the defense of non-infringement is appropriately decided on summary judgment where the undisputed material facts mandate the entry of judgment as a matter of law.  See Telemac, 247 F.3d at 1332 (affirming summary judgment of non-infringement); see also Wavetronix LLC v. EIS Elec. Integrated Sys., 573 F.3d 1343, 1361–62 (Fed. Cir. 2009) (affirming summary judgment of non-infringement); Spiroflow Sys., Inc. v. Flexicon Corp., 511 F. Supp. 2d 608, 612 (W.D.N.C. 2007) (granting summary judgment of non-infringement).

15

Once the moving party has demonstrated an absence of material fact, the non-moving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting FED. R. CIV. P. 56(e)). The mere existence of evidence in support of the non-moving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-moving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

**A. LEGAL STANDARDS GOVERNING INFRINGEMENT**

An infringement analysis entails two steps: (1) the Court must determine the meaning and scope of the patent claims, then (2) the construed claims are compared to the accused product. See Aquatex Indus., Inc. v. Techniche Solutions, 419 F.3d 1374, 1380 (Fed. Cir. 2005); Spiroflow Sys., 511 F. Supp. 2d at 612. The burden is on the patentee to show that the accused device contains each limitation of the asserted claim, either literally or under the doctrine of equivalents. See Catalina Mktg. Int'l, Inc. v. Coolsavings.com, 289 F.3d 801, 812 (Fed. Cir. 2002); Becton Dickinson & Co. v. C.R. Bard, Inc., 922 F.2d 792, 798 (Fed. Cir. 1990). Literal infringement can only be found if "every limitation recited in the claim appears in the accused device, i.e., when 'the properly construed claim reads on the accused device exactly.'" DeMarini Sports, Inc. v. Worth, Inc., 239 F.3d 1314, 1331 (Fed. Cir. 2001) (quoting Amhil Enters., Ltd. v. Wawa, Inc., 81 F.3d 1554, 1562 (Fed. Cir. 1996)). A product that does not literally infringe may be found to infringe under the doctrine of equivalents "if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." Spiroflow Sys., 511 F. Supp. 2d at 615 (quoting Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 21 (1997)). "Under the doctrine of equivalents,

16

'[a]n accused product is equivalent to a claimed invention if the differences between the two are insubstantial to one of ordinary skill in the art." Id. (quoting Overhead Door Corp. v. Chamberlain Group Inc., 194 F.3d 1261, 1269 (Fed. Cir. 1999)). "Application of the doctrine of equivalents is the exception [and] not the rule." London v. Carson Pirie Scott & Co., 946 F.2d 1534, 1538 (Fed. Cir. 1991). Additionally, application of the doctrine of equivalents is limited by prosecution history estoppel.

The doctrine of prosecution history estoppel is a "legal limitation" on the range of equivalents available to a patentee, Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 30 (1997), which "requires that the claims of a patent be interpreted in light of the proceedings in the PTO during the application process." Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 535 U.S. 722, 733 (2002). Prosecution history estoppel ensures that a patentee does not use the doctrine of equivalents to reach subject matter covered in claims "that have been cancelled or rejected." Id. at 734 (quoting Schriber–Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 220–21 (1940)).

By way of background, during prosecution of a United States patent, an Examiner often will issue an "office action." In the office action, the examiner may point out prior art that reads on the claims of the patent. The applicant often will respond by amending the claims to avoid the prior art. Prosecution history estoppel prevents a patentee from recapturing through the doctrine of equivalents subject matter that the applicant surrendered during prosecution. See Integrated Tech. Corp. v. Rudolph Techs., Inc., 734 F.3d 1352, 1356 (Fed. Cir. 2013) (citing Festo, 535 U.S. at 734). "Prosecution history estoppel limits infringement by otherwise equivalent structures, by barring recapture by the patentee of scope that was surrendered in order

to obtain allowance of the claims." <u>Pall Corp. v. Micron Separations, Inc.</u>, 66 F.3d 1211, 1218 (Fed. Cir. 1995).

Prosecution history estoppel is founded on the public notice function of patents. The Supreme Court has recognized that "[t]here can be no denying that the doctrine of equivalents, when applied broadly, conflicts with the definitional and public-notice functions of the statutory claiming requirement." <u>Warner-Jenkinson Co.</u>, 520 U.S. at 29; <u>Festo</u>, 535 U.S. at 731 ("A patent holder should know what he owns, and the public should know what he does not."). As a result, prosecution history estoppel limits the bounds of what a patentee can claim as equivalent by "require[ing] that the claims of a patent be interpreted in light of the proceedings in the PTO during the application process." <u>Festo</u>, 535 U.S. at 733. Where subject matter is surrendered during prosecution, prosecution history estoppel prevents the patentee from "recaptur[ing] in an infringement action the very subject matter surrendered as a condition of receiving the patent." <u>Id.</u> at 734.

Prosecution history estoppel is presumed to be a general disclaimer of the territory between the original claim and the amended claim. <u>See id.</u> at 740. If an applicant voluntarily surrenders subject matter through a narrowing amendment to satisfy any requirement of the Patent Act, there is a presumption that equivalents for the added limitations are barred. <u>See id.</u>; <u>iCeutica Pty Ltd. v. Lupin Ltd.</u>, No. CV MJG-17-0394, 2018 WL 656447, at *5 (D. Md. Feb. 1, 2018). In other words, the doctrine of equivalents cannot be used to broaden a precise limitation that was added to overcome prior art. <u>See id.</u> at **8-9 (holding that plaintiff's claim of infringement under the doctrine of equivalents was estopped because the patentee had amended its claims to overcome an obviousness rejection based on prior art).

18

"Just as prosecution history estoppel may act to estop an equivalence argument under the doctrine of equivalents, positions taken before the PTO may bar an inconsistent position on claim construction under § 112, ¶ 6." Regents of Univ. of Minn. v. AGA Med. Corp., 717 F.3d 929, 942 (Fed. Cir. 2013); see also Ballard Med. Prods. v. Allegiance Healthcare Corp., 268 F.3d 1352, 1359 (Fed. Cir. 2001). "When a patentee advises the examiner (and the public after patent issuance) that a particular structure is not within his invention, the patentee is not permitted to assert in a subsequent infringement action that the same structure is equivalent to the structure described in the patentee's specification for purposes of section 112 paragraph 6." Ballard, 268 F.3d at 1359. For instance, in Ballard, the patentee explained during prosecution how the claimed valve was different than the prior art valves. The Court found the alleged infringing valve did not infringe as an equivalent under § 112, ¶ 6 "because the accused device includes structural features that the applicant represented were different from the invention." Id. at 1362.

### B. LEGAL STANDARDS GOVERNING INVALIDITY FOR INDEFINITENESS

The Patent Act requires that "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2. The Supreme Court declared that a claim is indefinite if, when "read in light of the specification delineating the patent, and the prosecution history, [it] fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." Nautilus, Inc. v. Biosig Instruments, Inc., 572 U.S. 898, 901 (2014). Indefiniteness is a question of law. ePlus, Inc. v. Lawson Software, Inc., 700 F.3d 509, 517 (Fed. Cir. 2012). If a claim limitation is indefinite, the claim is invalid. See, e.g., Allen Eng'g Corp. v. Bartell Indus., Inc., 299 F.3d 1336, 1348 (Fed. Cir. 2002).

To determine whether a claim is sufficiently definite, courts analyze whether "one skilled in the art would understand the bounds of the claim when read in light of the specification." Id. (quoting Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n, 161 F.3d 696, 705 (Fed. Cir. 1998)); see also Nautilus, 572 U.S. 898, 908; Exxon Research & Eng'g Co. v. U.S., 265 F.3d 1371, 1375 (Fed. Cir. 2001) ("[T]he claims at issue [must be] sufficiently precise to permit a potential competitor to determine whether or not he is infringing."). In other words, "one skilled in the art, reading the original disclosure, must immediately discern the limitation at issue in the claims." Purdue Pharma L.P. v. Faulding Inc., 230 F.3d 1320, 1323 (Fed. Cir. 2000).

## III.    DISCUSSION

### A. Whether the TMT Literally Infringes Claim 15(d)

Claim 15 of the '067 Patent includes subparts (a) through (d). Plaintiff must show that the TMT meets every element of each subpart of Claim 15 to establish infringement of that claim. See Catalina Mktg., 289 F.3d at 812. The undisputed facts establish that the TMT does not meet the limitations of Claim 15(d). Claim 15(d) requires the TMT to have a:

> means for looping a portion of the means for circumferentially surrounding around the body part, wherein the means for looping is connected to the means for circumferentially surrounding and the means for compressing, and wherein upon passing the means for circumferentially surrounding through the means for looping, a portion of the means for compressing also passes through the means for looping, wherein a gap is located between portions of the means for compressing at the means for looping when the means for circumferentially surrounding is applied to the body part;

(FOF 4).

Inserting the Court's definitions into this subpart, the TMT must have:

> [A buckle] a portion of the [outer sleeve/first elongated member] around the body part, wherein the [buckle] is connected to the [outer sleeve/first elongated member] and the [inner strap/second elongated member], and wherein upon passing the [outer sleeve/first elongated member] through the [buckle], a portion of the [inner strap/second elongated member] also passes through the [buckle]…

(FOF 4, 17).

The Court's Claim Construction Order makes clear that the '067 Patent requires two structures to be connected to the buckle: (1) an outer sleeve or first elongated member; and (2) an inner strap or second elongated member.  (FOF 4, 17).  The Court's Claim Construction Order also makes clear that the '067 Patent requires two structures to pass through the buckle when the tourniquet is applied: (1) an outer sleeve or first elongated member; and (2) an inner strap or second elongated member.  (Id.).  It is axiomatic that an "outer sleeve" cannot also be an "inner strap" and a "first elongated member" cannot also be a "second elongated member."  The two-structure requirement also is supported by the plain language of the '067 Patent, which is the "single best guide" to assessing this claim.  See Honeywell Int'l, Inc. v. ITT Indus., Inc., 452 F.3d 1312, 1318 (Fed. Cir. 2006).  Claim 15(d) states that the "means for looping is connected to the means for circumferentially surrounding and the means for compressing"; and "upon passing the means for circumferentially surrounding through the means for looping, a portion of the means for compressing also passes through the means for looping."  (FOF 4).

The specification describes the inner strap in various embodiments – looped or not looped and consisting of one portion or two portions.  (FOF 18).  In each description, the constant is that the inner strap runs from the windlass to the tip of the outer strap on one end and to the buckle on the other end.  (Id.).  Additionally, the CAT itself (which Plaintiff asserts reads on the '067 Patent) has two structures: an outer sleeve and an inner strap.  (FOF 20–21).  The CAT's inner strap runs inside the pocket created by the outer sleeve and connects to the end of the outer sleeve and to the buckle.  (FOF 21).  Thus, when the outer sleeve passes through the buckle, a portion of the inner strap also passes through the buckle, and the inner strap is connected to the buckle.  (Id.).

The TMT is very different from the limitations of Claim 15, including the relevant description in the specification, and from the CAT. Assuming it is appropriate to describe the TMT's Tightening Band as the "means for compressing" ("inner strap/second elongated member"), its Strap as the "means for circumferentially surrounding" ("outer sleeve/first elongated member"), and the Slider/Receiver as the "means for looping" (a buckle) (see FOF 33), there is no literal infringement because the Tightening Band does not connect to the Slider/Receiver as required by Claim 15(d). (FOF 34; FOF 4 ("… wherein the means for looping is connected to the means for circumferentially surrounding and the means for compressing …."). Further, no portion of the Tightening Band passes through the Slider/Receiver, nor can it. (FOF 34; FOF 4 ("… wherein upon passing the means for circumferentially surrounding through the means for looping, a portion of the means for compressing also passes through the means for looping …")). The undisputed facts show that the Tightening Band (inner strap/second elongated member), which is 5–6" long, is connected directly to the Strap (outer sleeve/first elongated member) on either side of the back plate. (FOF 32). It is not connected to any part of the Slider/Receiver (buckle). (FOF 34–35). [**REDACTED**] (FOF 35). [**REDACTED**]. (Id.). [**REDACTED**]. (FOF 35).

Here, the Court agrees with Defendants that because the TMT's Tightening Band does not connect to or pass through the Slider/Receiver, the TMT does not meet the limitations of Claim 15(d), and it does not literally infringe Claim 15 of the '067 Patent as a matter of law.

### B. Whether the TMT Infringes Claim 15(d) under the Doctrine of Equivalents

Plaintiff also argues that it can establish infringement of Claim 15(d) through the doctrine of equivalents. (FOF 38 (claiming that the Tightening Band "functionally" [**REDACTED**]

passes through the Slider/Receiver)).[8]  Plaintiff essentially argues that it does not have to show that two separate structures are connected to the buckle or that two separate structures pass through the buckle when the tourniquet is applied.  It claims that because the Tightening Band is connected to the Strap, the Strap becomes both the "means for circumferentially surrounding" and the "means for compressing."  According to Plaintiff, because the Strap is connected to the Slider/Receiver, and the Tightening Band is connected to the Strap, then both the "means for circumferentially surrounding" and the "means for compressing" are ("functionally" or "indirectly") connected to the Slider/Receiver.  And, because the Strap passes through the Slider/Receiver when the tourniquet is applied, then both the "means for circumferentially surrounding" and the "means for compressing" ("functionally" or "indirectly") pass through the Slider/Receiver.  According to Plaintiff, the "means for circumferentially surrounding" is "the equivalent of" the "means for compressing."  For the following reasons, the Court agrees with Defendants that Plaintiff's argument renders the limitations of Claim 15(d) meaningless, is barred by prosecution history estoppel and is contrary to both this Court's Claim Construction Order and the plain language of the '067 Patent.

First, during prosecution, the applicant made the exact <u>opposite</u> argument to the USPTO in order to overcome prior art.  Claim 11 (issued as Claim 15) was rejected as anticipated by <u>Jennifer</u>.[9]  (FOF 5).  To overcome that rejection, the applicant argued that, in <u>Jennifer</u>, the only

---

[8]  Plaintiff's corporate representative testified that [**REDACTED**].  (FOF 38).  Plaintiff's expert Cupelli states in his Rebuttal Report to the Report of Defendants' expert that because the Tightening Band is connected to the Strap, it "functionally" passes through the Slider/Receiver and is "functionally" connected to the Slider/Receiver.  (FOF 38).

[9]  The parties agree, however, that Defendants' prosecution history estoppel argument is based on amendments to overcome <u>Brothers</u> and <u>Gouirand</u>, and not <u>Jennifer</u>, because <u>Jennifer</u> was removed as prior art.  <u>See</u> (Doc. No. 190 at 9).  Nevertheless, the applicant <u>did</u> distinguish <u>Jennifer</u> in that the applicant argued that Jennifer has only one structure that serves two functions

23

element that could serve to circumferentially surround a body part was a strap, identified by the letter "H." (FOF 5, 7). The figures from <u>Jennifer</u> show that "H" (the "Strap") is the means for circumferentially surrounding and an integral part of the means for compressing. (FOF 6). The applicant distinguished Claim 11 as requiring a means for compressing separate from the means for circumferentially surrounding, whereas <u>Jennifer</u> had only one structure that could provide both the means for compressing and the means for circumferentially surrounding a body part. (FOF 7) ("…Jennifer fails to disclose a means for circumferentially surrounding a body part <u>and</u> a means for compressing the body part.") (emphasis in original). Plaintiff now argues the opposite—that the TMT infringes the '067 Patent because the means for circumferentially surrounding is the same structure as the means for compressing. As Defendants note, this is the exact type of argument that prosecution history estoppel is designed to prohibit—that which a patent applicant must give up during prosecution to meet a requirement of the Patent Act cannot be regained through litigation.

Thereafter, the Patent Office rejected Claim 11 (Claim 15 as issued) as anticipated by <u>Brothers</u>. (FOF 8). In response, and to overcome this rejection, the applicant amended the claim to add the following limitation to subsection (d): "wherein upon passing the means for circumferentially surrounding through the means for looping, a portion of the means for compressing also passes through means for looping." (FOF 10). <u>Jennifer</u> discloses a single strap used for two purposes—to circumferentially surround and to compress. (FOF 6). Brothers discloses two structures—a strap and a band—that both circumferentially surround an extremity, and one is tightened to create compression, but there is no buckle. (FOF 9). The limitation

---

(a "means for compressing" and a "means for circumferentially surrounding"), but Plaintiff argued that its claimed invention required two structures—one for each function.

added by the applicant essentially distinguished <u>Jennifer</u> and <u>Brothers</u> by requiring that there be two structures, a strap and a band, both of which must be connected to and pass through a buckle.  (FOF 7, 10).

Finally, after yet another rejection based on prior art, the claim was allowed only with the addition of the following limitation to subsection (d): "wherein a gap is located between portions of the means for compressing at the means for looping when the means for circumferentially surrounding is applied to the body part."  (FOF 11–13).

To overcome <u>Jennifer</u>, the applicant argued that "[t]he only element of Jennifer that can serve to circumferentially surround a body part is strap H.  However, the means for compressing the body part of Jennifer is also Strap H…Jennifer fails to disclose a means for circumferentially surrounding a body part and a means for compressing the body part."  (FOF 7).  This argument and the limitations added to Claim 15 to overcome prior art narrowed Claim 15.  Without these limitations narrowing Claim 15, Claim 15 repeatedly had been rejected as not patentable.  As a result, Plaintiff cannot now expand Claim 15 through the doctrine of equivalents to regain through litigation subject matter it was forced to give up to obtain the Patent.  Based on the prosecution history, Plaintiff is legally barred from arguing that the TMT Strap is both the "means for circumferentially surrounding" and the "means for compressing" through the doctrine of equivalents.  Any other result would allow Plaintiff to broaden the scope of the '067 Patent through litigation to cover subject matter the USPTO determined was not patentable.  Further, the '067 Patent and this Court's Claim Construction Order unequivocally define "the means for circumferentially surrounding" and "the means for compressing" as two separate structures.  (FOF 4 ("upon passing the means for circumferentially surrounding through the means for looping, a portion of the means for compressing <u>also passes through</u> the means for

looping."); FOF 17 (Defining structures as a "first elongated member" and a "second elongated member").

Plaintiff's doctrine of equivalents argument – that the "means for circumferentially surrounding" is "functionally" or "indirectly" the "means for compressing" – also violates the all elements rule because it effectively reads out the "connected to..." and "upon passing…" limitations. The claim language clearly differentiates between the "means for circumferentially surrounding" and the "means for compressing" as two separate structural components and requires them to be separate. Nothing in the specification event hints at the notion that the "means for circumferentially surrounding" could also be construed to be the equivalent of the "means for compressing." Adopting Plaintiff's proposed construction would render meaningless both the plain language of the '067 Patent and the Court's construction of those terms.[10]

In sum, the Court finds that Plaintiff is barred by prosecution history estoppel from asserting a doctrine of equivalents argument.

### C. Whether there is a "gap" on the TMT

As Defendants further note, in addition to requiring two separate structures that connect to and pass through the buckle, Claim 15(d) requires the TMT to have a "gap." This "gap" is described in the '067 Patent as: "…wherein a gap is located between portions of the means for compressing at the means for looping when the means for circumferentially surrounding is applied to the body part…." (FOF 4). The TMT must satisfy this limitation to infringe Claim 15. If the TMT does not have this "gap" or if this limitation is invalid (addressed below), there can be no infringement as a matter of law. Using the Court's Claim Construction, this limitation

---

[10]  By their very nature, all tourniquets must surround an extremity and compress that extremity. It is not the function, but the structure by which that function is accomplished, that is at issue.

26

requires the TMT to have a "gap" between portions of the inner strap/second elongated member at the buckle when the outer sleeve/first elongated member is applied to the body. (FOF 4, 17).

As set forth above, the TMT's Tightening Band terminates on either side of the plastic plate. No portion of the Tightening Band (inner strap/second elongated member) is at the Slider/Receiver (buckle) at any time. Without any portion of the Tightening Band approaching the Slider/Receiver, there cannot be a "gap" between "portions" of the Tightening Band "at" the Slider/Receiver.

Plaintiff has made two divergent and inconsistent arguments attempting to identify a "gap" in the TMT. First, in response to Interrogatory No. 3, Plaintiff identified the "gap" as running the length of the Strap and spanning from one end of the terminating point of the Tightening Band to the other. (FOF 27). This argument ignores the language of the '067 Patent, which requires "a gap" to be located "at the means for looping" – i.e., at the buckle. Plaintiff's interpretation places the "gap" at multiple points along the entire length of the Strap, not at the Slider/Receiver. Plaintiff alternatively identified the "gap" as being located between one side of the Slider/Receiver and the other, using its argument that the Strap is "functionally" or "indirectly" both the "means for circumferentially surrounding" and the "means for compressing." (FOF 28). Prosecution history estoppel bars this argument for the reasons stated above.

### D. Whether the TMT Infringes Claim 16

Claim 16 of the '067 Patent incorporates the limitations in Claim 15. (FOF 16). Thus, it is a dependent claim. See 35 U.S.C. § 112 ¶ 4. Because Claim 16 is dependent on Claim 15, it can only be infringed if Plaintiff establishes infringement of Claim 15. See Minnesota Mining & Mfg. Co. v. Chemque, Inc., 303 F.3d 1294, 1302 (Fed. Cir. 2002). It

cannot do so. Thus, summary judgment in favor of Defendants is proper as to Claim 16 of the '067 patent.

**E. Whether The "Gap" Limitation Is Invalid Because It Is Indefinite**

"[T]he second paragraph of § 112 contains two requirements: first, the claim must set forth what the applicant regards as his invention, and second, it must do so with sufficient particularity and distinctness, i.e., the claim must be sufficiently definite." Allen Eng'g, 299 F. 3d at 1348 (quoting Solomon v. Kimberly–Clark Corp., 216 F.3d 1372, 1377 (Fed. Cir. 2000)) (quotation marks omitted). In determining whether the claim is sufficiently definite, the Court must determine whether "one skilled in the art would understand the bounds of the claim when read in light of the specification." Id. (quoting Personalized Media Commc'ns, LLC, 161 F.3d at 705); see also Exxon Research, 265 F.3d at 1375 ("[T]he claims at issue [must be] sufficiently precise to permit a potential competitor to determine whether or not he is infringing."); Purdue Pharma, 230 F.3d at 1323 ("[O]ne skilled in the art, reading the original disclosure, must immediately discern the limitation at issue in the claims.").

"A patent shall be presumed valid." 35 U.S.C. § 282 (2000). To overcome this presumption of validity, the party challenging a patent must prove facts supporting a determination of invalidity by clear and convincing evidence. Apotex USA, Inc. v. Merck & Co., 254 F.3d 1031, 1036 (Fed. Cir. 2001). Even if it is a formidable task to understand a claim, and the result not unanimously accepted, as long as the boundaries of a claim may be understood it is "sufficiently clear to avoid invalidity [for] indefiniteness." Id. at 1375; see also Invitrogen Corp. v. Biocrest Mfg., L.P., 424 F.3d 1374, 1383 (Fed. Cir. 2005) (If the district court was able to construe the claim term, that is an indication that the claim is not "insolubly ambiguous," i.e., not indefinite).

Plaintiff's expert addressing the '067 Patent testified there are two reasonable interpretations of what constitutes a "gap" based on the language of the '067 Patent. (FOF 27 29). Defendants argue that, assuming arguendo, that Plaintiff's expert is skilled in the art, this testimony establishes that the "gap" limitation is indefinite. Additionally, Plaintiff's corporate representative [**REDACTED**]. (FOF 24). Defendants contend that Plaintiff's [**REDACTED**] and its expert's assertion that there are two reasonable interpretations of "gap" renders the entirety of Claim 15 invalid as indefinite. See Allen Eng'g, 299 F.3d at 1348–49. Defendants further argue that because Claim 16 depends on Claim 15, the indefiniteness of Claim 15 also renders Claim 16 invalid.

In response, Plaintiff argues that this Court was able to construe the claims, showing that the boundaries of the claim are sufficiently understood. Plaintiff further notes that this Court has already rejected this same indefiniteness argument before issuing the Court's Claim Construction Order. See (Doc. No. 98 at 20–21). Plaintiff argues, therefore, that the "gap" language in Claim 15 is sufficiently definite. This Court agrees and finds that Defendants have not met the high burden of showing that Claim 15 is invalid for indefiniteness.

### F.    Remaining Motions

The Court next addresses the remaining motions, in light of the Court's determination that the '067 patent does not infringe Plaintiff's patent.

First, the following motions are denied as moot, given the Court's finding the '067 patent does not infringe Plaintiff's patent, and the Court is granting summary judgment to Defendants on the issue of infringement: Plaintiff's Motion in Limine to Exclude or Limit the Testimony of Non-Retained Experts, (Doc. No. 162); Plaintiff's Motion in Limine to Exclude the Testimony of Dr. Collins, (Doc. No. 166), the Motion for Partial Summary Judgment Limiting the Actual

Damages Plaintiff May Seek at Trial, filed by Alphapointe and Combat Medical Systems, LLC, (Doc. No. 171), the Motion to Exclude Opinions of James Davenport, filed by Alphapointe and Combat Medical Systems, LLC, (Doc. No. 177), the Motion in Limine to Exclude the Proferred Expert Testimony of Matt Cupelli, filed by Alphapointe and Combat Medical Systems, LLC, (Doc. No. 180), and the Motion in Limine to Exclude Certain Opinions of Graham Rogers, filed by Alphapointe and Combat Medical Systems, LLC, (Doc. No. 183).

Next, as to the Motion for Summary Judgment on Non-Infringement and Invalidity as to the '253 Patent, filed by Alphapointe and Combat Medical Systems, LLC, (Doc. No. 174), the parties have since stipulated to dismissal with prejudice Plaintiff's claim for infringement of the '253 Patent. See (Doc. No. 154). Thus, this motion will be terminated.

Next, as to the Motion to Strike 223 Patent Invalidity Contentions, filed by Composite Resources, Inc., (Doc. No. 224), the Court will deny the motion for the reasons stated in Defendants' memorandum. That is, Plaintiff contends that Defendants' "Third Patent Invalidity/Infringement Contentions," filed pursuant to 35 U.S.C. § 282, are improper because Defendants are attempting to offer evidence and arguments related to invalidity, which goes beyond what was properly disclosed in Defendant's Local Patent Rule 3.3 Invalidity Contentions. As Defendants note, however, amendments that conform to the evidence are favored, and Plaintiff has not shown that any unfair prejudice will result from allowing Defendants' patent invalidity contentions. The motion to strike is denied.

## IV.     CONCLUSION

For the foregoing reasons, the Court finds that the TMT does not infringe Claims 15 or 16 of the '067 Patent. Thus, the Court grants Defendants' motion for summary judgment of non-infringement as to the '067 Patent in part. To the extent, however, that Defendants contend that

Claims 15 and 15 are invalid for indefinite, the Court denies Defendants' summary judgment motion.

**IT IS THEREFORE ORDERED** that:

(1) The Motion in Limine to Exclude or Limit the Testimony of Non-Retained Experts, filed by Composite Resources, Inc., (Doc. No. 162), is **DENIED**;

(2) The Motion for Summary Judgment of Infringement, filed by Composite Resources, Inc., (Doc. No. 164), is **DENIED**;

(3) The Motion in Limine to Exclude the Testimony of Dr. Collins, filed by Composite Resources, Inc., (Doc. No. 166), is **DENIED**;

(4) The Motion for Summary Judgment on Non-Infringement and Invalidity as to the '067 Patent, filed by Alphapointe and Combat Medical Systems, LLC, (Doc. No. 168), is **GRANTED** in part and **DENIED** in part;

(5) The Motion for Partial Summary Judgment Limiting the Actual Damages Plaintiff May Seek at Trial, filed by Alphapointe and Combat Medical Systems, LLC, (Doc. No. 171), is **DENIED** as moot;

(6) The Motion for Summary Judgment on Non-Infringement and Invalidity as to the '253 Patent, filed by Alphapointe and Combat Medical Systems, LLC, (Doc. No. 174), is **TERMINATED** as moot;

(7) The Motion in Limine to Exclude Opinions of James Davenport, filed by Alphapointe and Combat Medical Systems, LLC, (Doc. No. 177), is **DENIED**;

(8) The Motion in Limine to Exclude the Proferred Expert Testimony of Matt Cupelli, filed by Alphapointe and Combat Medical Systems, LLC, (Doc. No. 180), is **DENIED**;

31

(9) The Motion in Limine to Exclude Certain Opinions of Graham Rogers, filed by

Alphapointe and Combat Medical Systems, LLC, (Doc. No. 183) is **DENIED** as moot;

(10)	The Motion to Strike 223 Patent Invalidity/Infringement Contentions, filed by

Composite Resources, Inc., (Doc. No. 224), is **DENIED**.

Signed: December 15, 2020

Max O. Cogburn Jr.
United States District Judge