# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

| | | |
|---|---|---|
| COMPOSITE RESOURCES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:17-CV-00072-FDW-DSC |
| | ) | |
| COMBAT MEDICAL SYSTEMS, LLC and | ) | |
| ALPHAPOINTE, | ) | |
| | ) | |
| Defendants. | | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES

Plaintiff Composite Resources, Inc. ("CRI"), submits the following Memorandum in Opposition to Defendants Combat Medical Systems, LLC and Alphapointe's ("Defendants") Motion for Attorneys' Fees. ECF No. 237.

Defendants have requested attorneys' fees pursuant to Federal Rule of Civil Procedure 54(d)(2) and 35 U.S.C. § 285. Defendants are not entitled to receive attorneys' fees as they are not "prevailing parties" in this action, and this case is not "exceptional" as required for such a recovery under the Patent Act. Indeed, the Court should exercise its discretion and find that Defendants engaged in unreasonable, frivolous litigation practices resulting in lengthened litigation and increased attorneys' fees for all parties. CRI respectfully requests the Court deny Defendants' Motion for Attorneys' Fees and Defendants' request for sanctions against Plaintiff.

## BACKGROUND

CRI initially filed this lawsuit on February 22, 2017, alleging that the Tactical Mechanical Tourniquet ("TMT") manufactured by Defendant Alphapointe and distributed by Defendant Combat Medical Systems, LLC infringed Claims 15 and 16 of CRI's U.S. Patent No. 7,842,067 (the "'067 Patent") and Claim 9 of CRI's U.S. Patent No. 7,892,253 (the "'253 Patent"). ECF No. 5. Defendants counterclaimed that the TMT did not infringe CRI's '067 or '253 Patents, and further claimed that the asserted patent claims were invalid for indefiniteness. ECF Nos. 26–27. On December 15, 2020, the Court entered a summary judgment order finding that the TMT did not infringe the '067 Patent. ECF No. 230. This order also found that the '067 Patent was not invalid. *See id.*

Defendants' instant motion seeks the recovery of attorneys' fees, alleging that CRI filed suit to prevent Defendants from competing; CRI had no clear infringement theory throughout the litigation; Defendants exhibited to CRI that the TMT did not infringe; and CRI engaged in improper litigation tactics. None of these assertions are true, and Defendants' Motion should be denied.

## ARGUMENT

Since a discretionary fee-shifting provision was added to the Patent Act in 1946, Courts have "viewed the award of fees not 'as a penalty for failure to win a patent infringement suit,' but as appropriate 'only in extraordinary circumstances.'" *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 548–49 (2014) (quoting *Park-In-Theaters, Inc. v. Perkins*, 109 F.2d 137, 142 (9th Cir. 1951)). The Supreme Court has emphasized that fee recovery for a "prevailing party" under §285 of the Patent Act begins and ends with a single inquiry: is the case "exceptional?" *Id.* at 549–51. Succinctly, "an 'exceptional' case is simply one that stands out from others with respect to the substantial strength of a party's litigating position (considering both

45146083 v1

the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 554. While Defendants argue many issues in their motion, none support an "exceptional case" fee award under §285.

35 U.S.C. § 285 provides: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." Defendants are not entitled to attorneys' fees under this provision. First, Defendants are not "prevailing parties." Second, Defendants' case is not "exceptional" as required by the statute. Third, CRI respectfully requests the Court exercise its discretion to not award attorneys' fees because such an award of attorneys' fees is not the rule, particularly when Defendants' own litigation strategy should be classified as unreasonable and frivolous. There is no basis for Defendants' request for attorneys' fees or sanctions, and Defendants' Motion should be denied.

## I. Defendants are not "prevailing parties" and are therefore not entitled to an award of attorneys' fees.

Defendants are not prevailing parties and may therefore not receive an award of attorneys' fees. Defendants' Memorandum overlooks and ignores a key, threshold requirement of an attorneys' fee award under 35 U.S.C. § 285: A party must prove that it is the ***prevailing party*** in order to even be eligible to receive attorneys' fees. *LendingTree, LLC v. Zillow, Inc.*, 54 F.Supp.3d 444, 455 (W.D.N.C. 2014) ("[T]o receive attorneys' fees under § 285, a party must demonstrate: (1) it is the **prevailing party**; and (2) the case is 'exceptional.'(emphasis added)"). Defendants' filing asserts that "Defendants are the prevailing parties in this action," *see* ECF No. 237 at 25, but other than a single sentence in a single short paragraph to conclude they are the prevailing parties, Defendants make no supporting arguments to establish that they are, in fact, the "prevailing parties."

45146083 v1

Importantly, Defendants are *not* the prevailing parties in this lawsuit. "In order for the Defendant to be a prevailing party, there must be a court ordered change in the legal relationship between the Plaintiff and Defendant in the Defendant's favor." *Caraustar Custom Packaging Grp. (Maryland), Inc. v. Stockart.com, LLC*, No. 3:05CV377-MU, 2006 WL 3371679, at \*1 (W.D.N.C. Nov. 20, 2006) (citing *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health & Human Res.*, 532 U.S. 598, 604 (2001); and then citing *Gardendance, Inc. v. Woodstock Copperworks, Ltd.*, 2006 WL 305220 (M.D.N.C. 2006)); *see also Manildra Mill. Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1182 (Fed. Cir. 1996) (determining that a party that *won* invalidity claim *and* defended against patent infringement claim successfully was a prevailing party even though it received no damages); *Silicon Graphics, Inc. v. ATI Techs., Inc.*, 569 F.Supp.2d 819, 833 (W.D. Wis. 2008), *aff'd*, 607 F.3d 784 (Fed. Cir. 2010) (finding that neither party prevailed in a patent suit); *cf. Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992) ("A plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."); *Omnibus Order, Royal Palm Props., LLC v. Pink Palm Props., LLC*, No. 17-80476-CV-MIDDLEBROOKS (S.D. Fla. Feb. 17, 2021), ECF No. 293, at 4–5 (finding that neither party was a "prevailing party" because "each Party prevailed on a central issue and that each Party lost on a central issue," where "[t]he Jury found that Defendant had not infringed on the Trademark but that the Trademark is not invalid on the grounds asserted by Defendant").

In *Silicon*, the district court determined there was no prevailing party in a patent infringement suit to allow the award of attorneys' fees pursuant to 35 U.S.C. § 285. *Silicon*, 569 F.Supp.2d at 833. The court explained that the plaintiff lost its infringement claim, but the jury did not find specific claims of the patent at issue invalid. *Id.* For the defendants, the court noted

that they "learned that their products did not infringe the . . . patent but lost when they tried to prove the invalidity of certain claims." *Id.* The court concluded that, "[u]nder the circumstances, ***no reason exists to award fees and costs to either side***." *Id.* (emphasis added).

The court's findings in *Silicon* are instinctive to the same circumstances here. In the Court's Order dated December 15, 2020, the Court found the TMT does not infringe Claims 15 or 16 of CRI's '067 Patent. *See* ECF No. 230. However, the Court also denied Defendants' invalidity claim. *See id.* "Each Party prevailed and lost on one of the two central issues in this case—leaving no clear winner." *See Omnibus Order, Royal Palm Props, LLC v. Pink Palm Props., LLC*, *supra*, ECF No. 293, at 5.[1] The outcome provides no material alteration of the legal relationship between the parties. Like the parties in *Silicon*, as well as those discussed in *Royal Palm Props.* in the Southern District of Florida, neither party prevailed because neither party succeeded on their respective claims. As a result, Defendants in this case were not "prevailing parties," and Defendants are not entitled to an award of attorneys' fees under 35 U.S.C. § 285.

Similarly, if Defendants are considered "prevailing parties" because they successfully defended against CRI's infringement claim, then CRI must also be considered a "prevailing party" because it successfully defended against Defendants' invalidity counterclaim. In other words, if there is a material alteration of the relationship of the parties for Defendants based on its allegedly successful defense of the infringement claim, then there must also be a material alteration of the relationship of the parties due to CRI's successful defense of Defendants' invalidity claim. Under Defendants' reasoning, CRI would also be a "prevailing party," entitling it to attorneys' fees

---

[1] While the Supreme Court addressed the appropriate standard for an exceptional case in *Octane Fitness* and *Highmark, Inc. v. Allcare Health Mgt. Sys., Inc.*, 572 U.S. 559 (2014), neither of those cases changed the well-settled jurisprudence on what constitutes "prevailing" in a patent case.

45146083 v1

pursuant to 35 U.S.C. § 285 as a prevailing party in an exceptional case. CRI doubts that Defendants intend such a result, which might explain why Defendants entirely ignored any discussion whatsoever of the critical and threshold "prevailing party," prong of the eligibility test for attorneys' fees pursuant to §285 of the Patent Act.

Defendants made no arguments to establish they were the prevailing parties. There is no support for such a finding in the Court's Judgment. Because Defendants are not the prevailing parties, they are not entitled to attorneys' fees. This Court should reach the "exceptional case" prong of the test.

## II. The instant case is not "exceptional"—Defendants are not entitled to attorneys' fees.

Even if Defendants are considered the "prevailing parties," Defendants are not entitled to attorneys' fees because Defendants' case is not exceptional. As noted, 35 U.S.C. § 285 provides that "[t]he court in *exceptional cases* may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285 (emphasis added). As a result, a party must also prove that the case is exceptional to receive attorneys' fees. *LendingTree*, 54 F.Supp.3d at 455 ("In other words, to receive attorneys' fees under § 285, a party must demonstrate: (1) it is the prevailing party; and (2) the case is 'exceptional.'"). The Supreme Court has required parties to prove entitlement to fees by a preponderance of the evidence. *Octane Fitness*, 572 U.S. at 557–58. As such, a mere entry of judgment against CRI cannot and does not alone make Defendants' case "exceptional," entitling Defendants to attorneys' fees under § 285. *See, e.g.*, *Dunhall Pharm., Inc. v. Discus Dental, Inc.*, 243 F.3d 564 (Fed. Cir. 2000) (affirming "district court's grant of summary judgment of no infringement and its denial of attorney's fees"); *see also Stone Basket Innovations, LLC v. Cook Med. LLC*, 892 F.3d 1175, 1178 (Fed. Cir. 2018) (denying attorneys' fees to defendants pursuant to Section 285 because the case was not exceptional, although the court granted plaintiff's motion to dismiss with prejudice).

6

The United States Supreme Court has identified that the Patent Act fails to define "exceptional," and therefore the term must be construed in accordance with its ordinary meaning. *Octane Fitness*, 572 U.S. at 553 (citations omitted). "In 1952, when Congress used the word in § 285 (and today, for that matter), '[e]xceptional' meant 'uncommon,' 'rare,' or 'not ordinary.'" *Id.* (citations omitted). As such, the Supreme Court has held

> that an "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

*Id.* at 554; *see also Sociedad Espanola de Electromedicina y Calidad, S.A. v. Blue Ridge X-Ray Co, Inc.*, 226 F.Supp.3d 520, 533 (W.D.N.C. 2016), *aff'd sub nom. Sociedad Espanola De Electromedicina Y Calidad, S.A. v. Blue Ridge X-ray Co., Inc.*, 721 F. App'x 989 (Fed. Cir. 2018).

This Court, looking to the United States Supreme Court, has identified examples of exceptional cases:

> A "district court may award fees in the ***rare case*** in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." Additionally, "a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." The *Octane Fitness* Court suggested district courts consider several "nonexclusive" factors, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."

*LendingTree*, 54 F.Supp.3d at 456 (emphasis added) (quoting *Octane Fitness,* 572 U.S. at 555; then quoting *id.*; and then quoting *id.* at 554 n.6 (citation omitted)).

Here, Defendants contend that CRI engaged in frivolous, unreasonable behavior throughout the course of this lawsuit. *See* ECF No. 237 at 20 ("Plaintiff's conduct demonstrates the zenith of frivolousness, and objective unreasonableness . . . ."). Defendants assert that CRI

7

alleged claims in "bad faith" that were "meritless." *See id.* at 1, 21. Yet Defendants' notion of exceptionality hinges on Defendants' unfounded theories that CRI filed this lawsuit for an "anticompetitive purpose" rather than to protect its intellectual property; Defendants had no clear patent infringement theory; Defendants allegedly offered convincing arguments that the TMT did not infringe the '067 Patent[2]; and that CRI allegedly engaged in improper litigation tactics.

*A.     CRI did not file this lawsuit for an anticompetitive purpose rather than to protect its intellectual property.*

As a somewhat curious basis for their motion, Defendants assert that CRI engaged in a "documented campaign" to prevent Defendants from competing with CRI, rather than an effort to enforce CRI's patent rights. *See* ECF No. 237 at 6. Defendants have offered absolutely no evidence, however, that CRI filed its suit for an anticompetitive purpose.

Nearly all "evidence" that Defendants provide relates to North American Rescue, LLC ("NAR"), a distributor which has no corporate relationship to CRI and is not a party to this lawsuit.

_____

[2] CRI notes that Defendants also allege that they provided "convincing arguments" that the TMT did not infringe the '067 Patent. CRI would suggest that the "convincing nature" of an argument is not a decision for Defendants, as it lies with the Court (or jury). Additionally, a determination regarding the sufficiency of the evidence to support the claims in the context of a stipulated dismissal lies with CRI.

Defendants would instead have CRI fail to protect its intellectual property. Defendants argue that CRI should have simply dismissed its claim of infringement as to the '067 Patent "because they said so." It is not up to Defendants or Defendants' counsel as to whether CRI believes Defendants' patent infringes CRI's '067 Patent and whether the evidence supports such a position. Instead, such decision is left to CRI and its counsel, which made reasonable inquiries as to fact and law to support their belief throughout the litigation that Defendants' product did infringe the '067 Patent, *see* ECF No. 237, Ex. 5 at 1; CRI's Disclosure of Initial Asserted Claims and Infringement Contentions, *see* ECF No. 237, Ex. 18; and Jonathan P. Bennett's comment's as CRI's 30(b)(6) designee, during which he asserted that "[Defendants'] invention tracks exactly with our patent and the Court's construction." *See* ECF No. 237, Ex. 20, at 202:20–202:21. CRI's position throughout the litigation remained steadfast because Defendants did not in fact offer arguments sufficient to cause CRI or its counsel to believe its allegations were frivolous. Further, Defendants are not in a position to make that ultimate determination.

45146083 v1

CRI's own 30(b)(6) designee, Jonathan Bennett, testified that CRI did not know what actions NAR was taking with regard to CRI's patents for the CAT. **Exhibit A**, Dep. of Jonathan Bennett 347:16–347:24, 348:7–348:11, 408:1–408:10, 410:14–410:25 ("Do I know what [NAR is] doing?  No.  You can ask me seven other different ways, and I don't know what they were doing.  Do I know they were doing something to help us?  Of course.  What and with who and why and how, I don't know.").  As a result, any actions taken by NAR that Defendants may consider or allege to be "anticompetitive" in nature are not the actions of CRI and should not be attributed to CRI.

Even if the correspondence by NAR cited by Defendants may somehow be imputed to CRI, the alleged anticompetitive discussions regarding the TMT identified by Defendants included numerous discussions of the involvement of intellectual property attorneys, as well as concerns of infringement by the TMT *prior to the lawsuit*.  *See* ECF No. 237, Ex. 4 at 2 ("Doug has look [sic] at the CAT for a long time and wrote our protest to there [sic] patent."); *id.*, Ex. 17, at 1, 3.  These discussions identify CRI's high priority on protecting its intellectual property and focus on conducting due diligence prior to filing any patent infringement suit, not the "anticompetitive purpose" that Defendants allege.

Furthermore, the proper means to assert such "anticompetitive conduct" allegations is through proper pleadings.  Defendants have not previously asserted any type of anticompetitive claim (or counterclaim) against CRI.  "A patentee who brings an infringement suit may be subject to antitrust liability for the anti-competitive effects of that suit if the alleged infringer (the antitrust plaintiff) proves . . . that the infringement suit was 'a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor[.]'"  *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1068 (Fed. Cir. 1998) (quoting *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144 (1961); and

9

then citing *California Motor Transp. Co. v. Trucking Unlimited,* 404 U.S. 508, 510 (1972)).  Such assertions of "sham litigation" like those now raised by Defendants are procedurally brought as counterclaims.  *See, e.g.*, *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 52, 62 (1993) (considering antitrust counterclaims against plaintiff that filed copyright infringement action and determining that "the Court of Appeals correctly held that sham litigation must constitute the pursuit of claims so baseless that no reasonable litigant could realistically expect to secure favorable relief"); *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1346 (Fed. Cir. 1998).

Here, the only counterclaims Defendants did file included those of non-infringement and invalidity of the asserted patents, and that those patents are unenforceable.  *See* ECF No. 26–27. Defendants asserted no counterclaim at any time during this suit alleging CRI violated antitrust laws in pursuit of an anticompetitive purpose, even though such an allegation would properly be asserted as a counterclaim.  Rather, Defendants now allege such an anticompetitive purpose in support of their claim for attorneys' fees when no claim has been properly alleged throughout the course of this four-year lawsuit.  Not surprisingly, such a claim was never properly asserted, and there is now no opportunity afforded to CRI to test the merits only evidence by communication of a third party.

B.      *CRI maintained a clear patent infringement theory throughout the course of the lawsuit.*

Additionally, CRI maintained a clear theory of patent infringement prior to and during this lawsuit based on statements of the United States Patent Office and CRI's own due diligence.  CRI's clear infringement theory further highlights CRI's intent to protect its intellectual property, not to engage in an anticompetitive purpose.

45146083 v1

First, CRI's infringement theory could not be "nonsensical" as Defendants allege because the Court denied Defendants' early Motions for Summary Judgment. *See* ECF No. 237 at 8. Defendants filed the following Motions for Summary Judgment early in the litigation:

- Motion for Summary Judgment of Non-Infringement (July 26, 2017), *see* ECF No. 42, and Reply in Support of Defendants' Motion for Summary Judgment (August 16, 2017), *see* ECF No. 54, which the Court **denied** on August 28, 2017, *see* ECF No. 57[3];

- Motion for Summary Judgment of Invalidity of Claims 15–16 of the '067 Patent and Claim 9 of the '253 Patent (January 17, 2018), *see* ECF No. 84, which the Court **denied** on April 12, 2018, *see* ECF No. 99.

If CRI's theory of infringement was so "nonsensical" as alleged by Defendants, then the Court would not have denied both of Defendants' early Motions for Summary Judgment. Instead, the Court could have, should have, and would have ended the case early.

Second, the Patent Office's communications support CRI's infringement theory. CRI filed a continuation of the '067 Patent on October 28, 2014, Patent Application No. 14/526,295, which claims the benefit of the '067 Patent. *See* **Exhibit B**. The claims of this patent continuation were written, in part, to specifically covered Defendants' TMT device. In the Examining Attorney's

---

[3] The Court's discussion in its Order provides further evidence of the unreasonable litigation tactics undertaken by Defendants. In denying Defendants' Motion for Summary Judgment, the Court stated: "Where a party in a patent infringement action moves for summary judgment prior to a proper claim construction but determination of the motion requires the application of construed claims to the accused device, summary judgment is premature." *See* ECF No. 57 at 1. Additionally the Court took care to note that, because "'Defendants have objected to every single one of Plaintiff's discovery requests and have produced nothing' . . . [t]his Court cannot rule on Defendants' Motion where Plaintiff has not had the 'opportunity to discover information essential to its opposition' and prior to the close of discovery." *See id.* at 2 (citations omitted).

45146083 v1

First Office Action, the Examining Attorney stated, "Application claims 15-20 are rejected as being 'anticipated' by claims 1-5 of US 7,842,067, since the narrower patent claim 1 recites the limitations of application claim 15 as well as additional structures of the inner strap." *See* **Exhibit C**. As such, the Examining Attorney reviewed the claims in the continuation application (which were based on the TMT) and believed that the precise Claim 15 of the continuation was covered by the '067 Patent. There is no better evidence that Defendants' TMT likely infringed the '067 Patent than this determination by the United States Patent Office, and such a determination confirmed CRI had more than ample belief that the TMT infringed the '067 Patent.

Third, in 2016, the email correspondence cited by Defendants refers to CRI's patent infringement case and supports its infringement theory. *See* ECF No. 237, Exs. 4, 5, 16, and 17. The aforementioned continuation of the '067 Patent, which Defendants reference in their Motion and Brief, serves as an example. Defendants have provided a disingenuous interpretation of CRI's comments related to this continuation of the '067 Patent. CRI actually stated, "Our continuing patent claims have been accepted. These claims further strengthen our patent infringement case. The TMT will not be in a position of strength when we claim patent infringement." *See* ECF No. 237, Ex. 5 at 1. Contrary to the angle provided by Defendants to the Court, this correspondence identifies that the continuation application further strengthened CRI's patent infringement claims, and in no way should be construed to mean that CRI claimed infringement for an anticompetitive purpose.

Additionally, CRI's Disclosure of Initial Asserted Claims and Infringement Contentions served on Defendants on June 8, 2017, also identify CRI's clear infringement theory. *See* ECF No. 237, Ex. 18. As required by this Court's Local Patent Rules, CRI's Disclosure of Initial Asserted Claims included a chart comparing each element of each infringing claim as to both the

12

'067 and '253 Patents.  *See id.* at 4–7.  Even a layman (or even an attorney not admitted to practice before the United States Patent Office), could compare the language in each element of each claim and recognize the nearly identical nature of each and every element of each claim.  *See id.*  This claim comparison served as the basis for CRI's patent infringement suit, and this chart alone sets forth a clear infringement theory, ***as required by the Local Patent Rules***.

During the discovery stage, CRI continued to maintain a clear theory of infringement.  In March 2019, at Defendants' Deposition of Jonathan P. Bennett, CRI's 30(b)(6) designee, CRI clearly asserted that it thought Defendants' patent infringed on its '067 Patent.  Mr. Bennett stated, "What I'm saying is that your invention tracks exactly with our patent and the Court's construction."  *See* ECF No. 237, Ex. 20, at 202:20–202:21.

Finally, CRI's actions during the course of the lawsuit support its filing in good faith. Following discovery, CRI presented each and every written and oral motion or other hearing made before this Court in good faith.  CRI's counsel engaged in zealous advocacy on behalf of its client based on the reasonable inquiries it made as to the facts and law on behalf of its client.  CRI asserts that there is no better support of its actions in good faith with regard to this lawsuit than its dismissal of the infringement claim as to the '253 Patent.  Following the close of discovery, CRI determined that the evidence did not support infringement of the '253 Patent. On June 21, 2019, the Parties filed a Joint Stipulation of Dismissal with Prejudice as to Count Two of the Amended Complaint related to the infringement of the '253 Patent.  *See* ECF No. 154.  Unlike the '253 Patent, CRI determined that discovery further supported its infringement claim as to the '067 Patent and it therefore did not seek to dismiss this claim.[4]

---

[4] CRI notes that Defendants have only discussed the '253 Patent in the context of Defendants' allegations that "plaintiff had no clear infringement theory."  *See* ECF No. 237 at 12–

Defendants have provided no evidence that CRI acted in bad faith, that this case was brought for improper purposes, or that the case is "exceptional." CRI acted in good faith throughout the course of the litigation, and particularly when it jointly dismissed the claims related to the '253 Patent. This case is not "exceptional" and Defendants are not entitled to an attorneys' fee award.

## III. CRI's patent infringement claims were not baseless and therefore sanctions against CRI are inappropriate.

Relatedly, Defendants attempt to reach beyond an award of fees under §285, and also seek "sanctions" against CRI. See ECF No. 237 at 24. This too is unwarranted and improper. As a threshold matter, Defendants did not serve a separate motion seeking only Rule 11 Sanctions, 21

---

15. Defendants have set forth no clear assertion that they are entitled to attorneys' fees related to the '253 Patent claim.

CRI contends that Defendants are not entitled to attorneys' fees with regard to the dismissed infringement claim related to the '253 Patent, as the Parties filed a Joint Stipulation of Dismissal with Prejudice as to Count Two of the Amended Complaint related to the infringement of the '253 Patent. *See* ECF No. 154.

Although there is no clear request for attorneys' fees as to the '253 Patent, Defendants do argue CRI's claim as to the '253 Patent must have been filed without foundation because CRI voluntarily dismissed the claim. *See* ECF No. 154. Assuming *arguendo* this assertion by Defendants attempts to request attorneys' fees for the claims related to the '253 Patent, CRI asserts that Defendants are not entitled to such attorneys' fees.

CRI dismissed the count against Defendants related to the '253 Patent because discovery revealed that the claim might be unsuccessful. At the time CRI filed its complaint, it did so in good faith under the belief that Defendants did infringe the '253 Patent.

To award attorneys' fees to Defendants simply because CRI made such a determination about the success of the claim following discovery would serve a chilling effect on narrowing the issues throughout the course of litigation. The Federal Circuit has identified that a voluntary dismissal *may* confer prevailing party status to allow a court to determine the exceptionality of the matter to permit an attorneys' fee award under 35 U.S.C. § 285. *See Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1036 (Fed. Cir. 2006). However, the Federal Circuit has also identified potential negative effects. An attorneys' fee award here would indeed encourage the type of behavior the Federal Circuit Court of Appeals feared in *Highway Equipment* when it considered that "defendant[s] . . . [may] oppose a dismissal and proceed to litigation on the merits, [which] would encourage the litigation of unreasonable or groundless claims." *See Highway Equip.*, 469 F.3d at 1035 (discussing effect of voluntary dismissal on prevailing party status where, if voluntary dismissal could not confer prevailing party status, a party might "oppose a dismissal and proceed to litigation on the merits").

14

days before filing as required by Fed.R.Civ.P. 116(c)(2).  This does prevent consideration of Rule 11 sanctions.

CRI's patent infringement claims were not baseless or frivolous, and therefore CRI respectfully asserts that it should not be sanctioned.  This Court has stated, "Legal arguments comply with Rule 11 unless they have 'absolutely no chance of success under the existing precedent.' . . .  Factual allegations comply with Rule 11 unless they are 'unsupported by any information.'"  *LendingTree*, 54 F.Supp.3d at 464 (citation omitted).  In *LendingTree*, the Court cited to the Federal Circuit and stated:

> In patent lawsuits, defending against baseless claims of infringement subjects the alleged infringer to undue costs—precisely the scenario Rule 11 contemplates. Rule 11(b)(2) mandates that, in any filing, counsel certifies he or she has made a reasonable inquiry that "the claims, defenses, and other legal contentions are warranted by existing law."  Rule 11(b)(3) also requires that counsel certify they have made a reasonable inquiry into whether their factual contentions have evidentiary support.  Sanctions may be imposed for counsel's failure to make a reasonable inquiry into either the facts or the law.

*Id.* at 465 (quoting *Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, 753 F.3d 1291, 1298 (Fed. Cir. 2014)).

The *LendingTree* Court declined to sanction the attorneys in accordance with Rule 11.  *Id.* at 466.  Some reasons provided by the Court in opposition to the defendant's argument included that (1) "An attorney must constantly balance his duty to zealously represent his client with the Rule 11 prohibition against non-meritorious and frivolous claims"; and (2) "Even if LendingTree's arguments were likely doomed to fail following the Court's claims construction, a party is not required to immediately settle or appeal claim construction."  *Id.* at 465.  Notably, Defendants base their sanctions argument on an assertion that "Defendants were [allegedly] right all along."  *See* ECF No. 237 at 19.  The outcome in *LendingTree* does not support such an assertion, however.  In fact, Defendants' early motions for summary judgment were all denied at the time they were filed.

CRI's counsel instead engaged in zealous advocacy of his client based on the requisite due diligence as to the law and facts. As a result, sanctions against CRI are not appropriate.

**IV.     The Court should exercise its discretion to not award attorneys' fees to Defendants.**

A district court may decline to award attorneys' fees, as finding a case to be exceptional is in the Court's discretion. *Gardco Mfg., Inc. v. Herst Lighting Co.,* 820 F.2d 1209, 1215 (Fed. Cir. 1987) (noting that "[a]fter the district court determines that a case is exceptional, there remains in every case its freedom to exercise its discretion 'informed by the court's familiarity with the matter in litigation and the interest of justice'" (alteration in original) (citation omitted)). Keeping with the Court's ability to exercise its discretion in awarding attorneys' fees pursuant to 35 U.S.C. § 285, this Court's sister court in the Eastern District of North Carolina has stated, "It is the exception and not the rule to award counsel fees in cases of this nature." *Davis Harvester Co. v. Long Mfg. Co.*, 283 F.Supp. 536, 538 (E.D.N.C. 1967) (citing *Ferment-Acid Corporation v. Miles Laboratories, Inc.*, 338 F.2d 586 (7th Cir. 1964); then citing *Berry Brothers Corporation v. Sigmon*, 317 F.2d 700 (4th Cir. 1963); and then citing *Hayes Spray Gun Company v. E. C. Brown Company*, 291 F.2d 319 (9th Cir. 1961)); *see also Checkpoint Sys., Inc. v. Knogo Corp.*, 490 F.Supp. 116, 123 (E.D.N.Y. 1980) (citing *Larchmont Engineering, Inc. v. Toggenburg Ski Center, Inc.*, 444 F.2d 490 (2d Cir. 1971) to note that attorneys' fees awards are "discretionary" and should be used "sparingly").

Here, CRI respectfully requests the Court exercise its discretion to decline awarding attorneys' fees to Defendants. In determining whether a party is entitled to attorneys' fees, "[t]he court 'may consider the litigation actions of both sides in connection with § 285.'" *Cabot Corp. v. Sol. Tech., Inc.*, 122 F.Supp.2d 599, 645 (W.D.N.C. 2000) (citing *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1575 (Fed. Cir. 1996)); *see also Dodge-Regupol, Inc. v. RB Rubber Prod., Inc.*, No. CIV3:06-CV-236, 2010 WL 1342918, at *11 (M.D. Pa. Mar. 31, 2010) (choosing not to

16

45146083 v1

Case 3:17-cv-00072-MOC-DSC     Document 239     Filed 03/04/21     Page 16 of 25

award attorneys' fees because the "discovery by both parties as prolonged and actively contested, and each party . . . felt aggrieved"). Courts have declined to award attorneys' fees pursuant to 35 U.S.C. § 285 when a prevailing party engaged in "dilatory tactics" and "frivolous motions." *Buckhorn Inc. v. Orbis Corp.*, 618 F. App'x 1000, 1002 (Fed. Cir. 2015) (determining the matter was not exceptional and declining to award attorneys' fees because "both sides" engaged in "frivolous" behaviors). "It is the judicial duty to refuse to condone behavior that exceeds reasonable litigation tactics." *Sensonics*, 81 F.3d at 1575.

During this case, Defendants engaged in dilatory tactics and frivolous motions. If CRI's zealous advocacy of its client may bring this case into the realm of being "exceptional," then Defendants' over-the-top litigation tactics, which were wasteful and inappropriate, must also be "exceptional," frivolous, unreasonable, and ungrounded.

Defendants filed numerous unnecessary and unsuccessful motions, including multiple wasteful and inappropriate motions for summary judgment that unnecessarily prolonged the litigation. *See, e.g.*, ECF Nos. 42, 54. 71, 99, 154, 168, 171, 174. The docket for this litigation includes 237 documents. *See* **Exhibit D**. A review of the filing history identifies that Defendants' counsel initiated the predominant number of the filings related to this lawsuit. Even the Defendants admit that its motions were "numerous." *See* ECF No. 237 at 15 ("Defendants filed numerous motions outlining the fallacy in CRI's arguments and detailing that the TMT simply did not infringe the Patents-in-Suit.").[5]

First, Defendant Alphapointe filed a virtually identical Complaint for Declaratory Judgment in the Western District of Missouri against CRI *after* the above-identified lawsuit was already pending in this Court. *See* Case No. 4:17-cv-00129-JTM, ECF No. 1, attached hereto as

---

[5] Notably, none but the last of these motions were even remotely successful.

45146083 v1

**Exhibit E**.  Defendants took such action knowing that the first-to-file rule would almost certainly prohibit the Western District of Missouri from taking up the matter due to the nearly identical, already-filed action in the Western District of North Carolina.  *See Commc'ns Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1362 (Fed. Cir. 2020) (identifying that the action first-filed receives priority "unless considerations of judicial and litigant economy, and the just and effective disposition of disputes requires otherwise" (quoting *Serco Servs. Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1038 (Fed. Cir. 1995))); *see also id.* ("When one of two competing suits in a first-to-file analysis is a declaratory judgment action, district courts enjoy a 'double dose' of discretion: discretion to decline to exercise jurisdiction over a declaratory judgment action and discretion when considering and applying the first-to-file rule and its equitable exceptions.  Although district courts can, in the exercise of that discretion, dispense with the First-to-File Rule, there must 'be sound reason that would make it unjust or inefficient to continue the first-filed action.'"  (citations omitted)).

To the surprise of neither party, and in accordance with the first-to-file rule, the Missouri action was dismissed and Defendant Alphapointe was then required to engage in further needless argument to have its non-infringement defenses "transferred" before this Court.  Defendant Alphapointe's actions further increased their own attorneys' fees, and highlight the unreasonable behavior in which Defendants engaged throughout the course of the litigation.

Second, Defendants filed numerous additional motions, including motions for summary judgment in addition to those previously mentioned, which increased Defendants' attorneys' fees. Defendants' actions further established Defendants' litigation strategy beyond zealous advocacy, moving it into the realm of wasteful, unreasonable, and exceptional behavior.  The additional motions filed by Defendants include:

18

- Motion for Sanctions Under Rule 11 (July 19, 2017), *see* ECF No. 37, which included numerous inaccurate statements and missing facts, primarily that CRI had tampered with the configuration of the infringing device, *see* ECF No. 44, even though CRI's configuration of the TMT aligned with Defendants' own admissions that actual users of the TMT combat tourniquet utilize the tourniquet in the same configuration.[6] *See* **Exhibit F**, Dep. of Kosiorek 58:22–61:20. The Court **denied** Defendants' Motion for Sanctions, *see* ECF No. 57;

- Motion for Sanctions Under Rule 37(b) against CRI (August 8, 2018), *see* ECF No. 120, for which the Court found **no bad faith** and **did not issue sanctions**, *see* ECF No. 128;

- Motion to Expedite after the Court reassigned the lawsuit to Judge Cogburn (November 2, 2017) to request a conference due to the reassignment, *see* ECF No. 71, which the Court respectfully **denied**, *see* ECF No. 72;

- Motion for Summary Judgment of Non-Infringement and Invalidity as to the '067 Patent (September 19, 2019), *see* ECF No. 168, which was **granted in part** on December 15, 2020 as to non-infringement but **denied in part** as to invalidity for indefiniteness of Claims 15 and 16 of the '067 Patent, *see* ECF No. 230;

- Motion for Partial Summary Judgment to limit the actual damages CRI could seek at trial (September 19, 2019), *see* ECF No. 171, which the Court determined was **moot** on December 15, 2020, *see* ECF No. 230;

---

[6] Ironically, Alphapointe issued a product recall to change its product so that users could not do what was claimed to be "tampering" in the sanctions motion. **Exhibit J**.

- Motion for Summary Judgment for Non-Infringement and Invalidity as to the '253 Patent (September 19, 2019), *see* ECF No. 174, which was **terminated** by the Court because the infringement claim ***had already been dismissed*** via a Joint Stipulation of Dismissal by both Parties, *see* ECF No. 154.[7]

Third, Defendants have involved a changing cast of characters in the form of multiple attorneys in this lawsuit, inevitably increasing costs as each new "team" was brought up to speed. Defendants filed numerous Motions for Admission Pro Hac Vice for three different attorneys, including Charles M. Landrum, III, Sara Weilert Gillette, and Marcellus Chase. *See* ECF Nos. 20–22, 24. None of these attorneys remained in the case. Later in the lawsuit, Defendants' counsel changed, requiring two additional Motions for Admission Pro Hac Vice for two other attorneys, Anna M. Berman and Juliet A. Cox, at the firm representing Defendants, Kutak Rock LLP. *See* ECF Nos. 132–33. Marcellus Chase of Kutak Rock also filed a Notice of Withdrawal. *See* ECF No. 158. Furthermore, although no Notice of Withdrawal or Notice of Appearance appear to have ever been filed, Defendants local counsel changed from Jason M. Sneed, Megan E. Sorokes, and Charles M. Landrum of Sneed PLLC to Michael G. Adams and Nicholas H. Lee of Parker Poe Adams & Bernstein LLP. *See* ECF Nos. 33, 235. At the *Markman* Hearing, even the Court commented on the number of attorneys present and the fees incurred. **Exhibit H**, *Markman* Hearing Tr. 11:5–11:8 ("[T]here are more lawyers in here than in any other case that we have. Most of them are not arguing the case. Most of them –usually I have – everything is full out here. We've got all these folks billing time."). Notably, CRI only had two attorneys present at the

---

[7] CRI notes that even in Defendants' Brief, Defendants spend three pages presenting arguments regarding CRI's alleged lack of infringement theory as to the already dismissed '253 Patent, even though Defendants set forth no argument as to attorneys' fees with regard to the '253 Patent. *See* ECF No. 237 at 12–15. Such discussion further evidences Defendants' wasteful litigation strategy.

*Markman* Hearing—lead counsel and local counsel—compared to the four attorneys who appeared on behalf of the Defendants.  **Exhibit H**, *Markman* Hearing Tr. at 1.

Defendants have also engaged generally in unreasonable, exceptional, and inappropriate litigation behavior, including:

(1)   Defendants failed to comply with discovery requests, objecting to all of CRI's discovery requests and producing no information prior to the close of discovery. ECF No. 57 at 2 ("'Defendants have objected to every single one of Plaintiff's discovery requests and have produced nothing' . . . [t]his Court cannot rule on Defendants' Motion where Plaintiff has not had the 'opportunity to discover information essential to its opposition' and prior to the close of discovery." (citations omitted)).

(2)   Defendants deposed CRI's 30(b)(6) designee Jonathan Bennett for nearly twelve hours until 9:12 P.M. at night, although the deposition began at 9:47 A.M., *see* **Exhibit A**, Dep. of Jonathan Bennett 5:1–5:7, 426:21–426:22;

(3)   The report of Defendants' *Markman* expert and all supporting documents, were provided at the expert's deposition rather than prior, *see* **Exhibit G**, Dep. of Jensen 6:22–7:4, 15:14–15:21, 16:22–16:25, 70:4–70:20;

(4)   The 117-slide presentation utilized by Defendants at the *Markman* Hearing, which is attached hereto as **Exhibit I**, was not provided to CRI until minutes before the *Markman* Hearing and did not constitute sufficient notice.  **Exhibit H**, *Markman* Hearing Tr. 14:6–14:25; and

(5)   Defendants also brought their *Markman* expert to the *Markman* Hearing even though he was not allowed to testify at the Hearing, *see* **Exhibit H**, *Markman*

21

Hearing Tr. 108:9–108:10 ("This is Dr. Jensen, our expert.  We obviously didn't need him today, but we brought him in case we did.").

Finally, there is no better evidence that Defendants have engaged in over-litigation of the matters in this suit than the fact that Defendants filed a motion for extension of time to file the instant motion after the Clerk entered Judgment with regard to the case on January 19, 2021.  *See* ECF No. 231.  Pursuant to Rule 54(d)(2) and 35 U.S.C. § 285, Defendants filed a request for extension of time to file their Motion on January 20, 2021.  *See* ECF No. 233.  The Court granted Defendants' request for extension of time on January 22, 2021.  Defendants filed their Motion and 23-page Brief on February 18, 2021.  *See* ECF Nos. 235–236.  Despite Defendants' overly litigious approach to this lawsuit, Defendants now seek attorneys' fees in the amount of $2,152,136.18.  *See* ECF No. 236.  Of great consequence, Defendants make no effort to segregate their fees and costs between the defense and prosecution of the unsuccessful counterclaims, once again over reaching and complicating this issue, even if they could prevail on the motion.  Defendants have used this strategy throughout the course of this litigation and this "exceptional" behavior has undoubtedly caused unnecessary fees with regard to this Motion specifically, as well as the entirety of this four-year litigation.

Defendants' own actions made the matter "exceptional," not the litigation strategy of CRI.  Each of the aforementioned actions by Defendants resulted in over-litigation of the issues, incurring unnecessary attorneys' fees.

Even if the Court declines to recognize that Defendants' litigation tactics were frivolous and unreasonable to deny an attorneys' fee award to Defendants, the parties, at the very least, engaged in the zealous advocacy of their respective clients, and therefore, Defendants are not entitled to attorneys' fees.  *Morgan Adhesives Co. v. Chemtrol Adhesives, Inc.*, 574 F.Supp. 832,

836 (N.D. Ohio 1983), *aff'd*, 765 F.2d 158 (Fed. Cir. 1985) (declining to grant attorneys' fees and stating "this court is not willing to discourage attorneys from that vigorous representation of clients which their Code of Professional Responsibility demands of them"); *see also CNH Am. LLC v. Kinze Mfg., Inc.*, 809 F.Supp.2d 280, 295 (D. Del. 2011) ("Though the parties in this case engaged in 'hardball' litigation tactics throughout the pendency of this litigation, none of their conduct was "exceptional" in that regard."); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 372 F.Supp.2d 833, 852 (E.D. Va. 2005) ("Counsel for both sides litigated their clients' respective positions vigorously and aggressively, as must be reasonably expected where, as here, there are experienced and zealous legal advocates involved."). CRI maintains that the attorneys' fees incurred during this litigation were only the result of the litigious nature of the Defendants. However, if Defendants actions during this litigation cannot be deemed exceptional to deny attorneys' fees, CRI's actions likewise cannot be deemed exceptional to permit an attorneys' fee award.

The "interest of justice," *see Gardco Mfg.*, 820 F.2d at 1215, would not allow an attorneys' fee award to a party whose actions during the course of litigation were far more unreasonable and frivolous than CRI's actions are alleged to have been. As a result, CRI respectfully requests that this Court exercise its discretion to decline an award of attorneys' fees to Defendants.

**CONCLUSION**

CRI respectfully requests, pursuant Federal Rule of Civil Procedure 54(d)(2), 35 U.S.C. 285, and applicable authorities, that this Court enter an Order denying Defendants' Motion for Attorneys' Fees, including its request for sanctions.

s/William Y. Klett, III
William Y. Klett, III *Pro Hac Vice*
BURR & FORMAN, LLP
Post Office Box 11390
Columbia, South Carolina 29211
Telephone: (803) 779-9800
Email: wklett@burr.com

Marcus A. Manos, NC Bar No. 21723
NEXSEN PRUET, LLC
P.O. Drawer 2426
Columbia, SC 29202-2426
Telephone: (803) 771-8900
Email: mmanos@nexsenpruet.com

Attorneys for Plaintiff
COMPOSITE RESOURCES, INC.

March 4, 2021

Columbia, South Carolina

45146083 v1

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was filed with the Court on this 4th day of March, 2021, using the Court's CM/ECF filing system, which will provide notice to all counsel of record.

s/William Y. Klett, III
Attorney for the Plaintiff
